954 So.2d 859 (2007)
Terry Randall WHITEHEAD and Tabitha Renee Bartlett Whitehead, Plaintiffs-Appellants
v.
Matthew Dale HUMPHREY, Defendant-Appellee.
No. 42,078-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2007.
*860 Rick Fayard, Bossier City, for Appellants.
Kitchens, Benton, Kitchens & Black, by Paul E. Kitchens, Minden, for Appellee.
Before GASKINS, CARAWAY and MOORE, JJ.
CARAWAY, J.
This is a redhibition case involving the sale of a home. The plaintiffs claimed various latent defects in the house that were discovered in the nineteen months between the sale and delivery of the home and their filing of suit. The defendant raised the one-year prescription for redhibitory defects applicable to residential immovables and challenged the plaintiffs' delay in filing suit after the time of their discoveries of the alleged defects. The trial court ruled that claims regarding certain defects were prescribed but awarded a diminution in the purchase price for the cost of repairs for other defects in the home. The plaintiffs appeal seeking a complete rescission of the sale and, alternatively, asserting error in the trial court's ruling on prescription. We affirm the trial court's ruling but amend the amount of the judgment, awarding attorney's fees because *861 of the seller's prior knowledge of the particular defect which served as the basis for the trial court's ruling.

Facts
Terry and Tabitha Whitehead purchased a $67,000 home in rural Webster Parish from Matthew Humphrey on February 25, 2004. Humphrey paid $44,000 for the property about six months earlier and had partially renovated it. His mother, Laura Humphrey, is a licensed real estate agent and owns LA State Realty, the listing agency for the home. The Humphreys employed Chad Callender for the renovation work on the home.
After execution of a purchase agreement in January 2004, the Whiteheads inspected the property four or five times prior to the closing. The mortgage lender's appraiser inspected the dwelling on February 4, 2004, and required some minor repairs. The appraiser noted the "toilet does not function properly in the rear bath." The termite inspection occurred prior to closing, on February 18, 2004.
Humphrey's renovations prior to the sale included replacing rotten wood underneath the new bedroom window, work on the deck such as putting Styrofoam around the bottom, replacing all the handrails, releveling the porch, and work on the stairs and the septic system. Callender's work consisted of interior painting, replacing sheetrock, tearing out a wall, installing a replacement window and digging up 80 feet of field line for the septic system, as well as replacing some rotten wood.
At the closing on February 25, 2004, Humphrey signed the papers separately from the buyers. The Whiteheads and their agent did not meet Matthew Humphrey until the trial.
A few months after the Whiteheads moved into the home, difficulties with the master bathroom plumbing started. Later on, the air conditioning unit required attention. They also discovered the fireplace was not functioning properly. In the process of starting to remodel the master bath in the spring of 2005, Terry Whitehead discovered rotted wood behind the ceramic tile, and the faulty plumbing/septic system issue again emerged in the other bathroom. When the Whiteheads consulted a professional licensed contractor, they learned of more rotten wood around the front porch.
The Whiteheads filed suit against Humphrey on October 5, 2005, seeking the rescission of the sale for alleged redhibitory defects and damages. Humphrey answered and urged a peremptory exception of prescription on the ground that the sale occurred more than one year before the Whiteheads filed suit. A ruling on the exception was deferred until trial.
After receiving testimony from both Tabitha and Terry Whitehead, the trial court ruled that the problems with the air conditioner and plumbing/septic system were discovered by them more than one year before they filed suit in October, 2005, and on that basis, those claims were prescribed. Nevertheless, plaintiffs put on several more witnesses to testify concerning air conditioning repairs. The trial court later reiterated its ruling in favor of defendant's exception.
At the conclusion of trial, the trial court ruled from the bench, finding that a redhibitory defect existed in the fireplace and that the Whiteheads were entitled to an award of $1,675 to repair it. No issue is raised regarding this ruling. The court also awarded $7,695 of the Whiteheads' claim for $21,774 for rotten wood within the structure. The judgment against Humphrey for $9,370 plus legal interest from October 5, 2005, and costs, was signed at the close of trial. The Whiteheads appeal the judgment.

*862 Law of Redhibition

Louisiana Civil Code Article 2520 provides:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
A defect is not hidden, and therefore not redhibitory, when the buyer knows of it either because it was disclosed by the seller or because the buyer discovered it himself. La. C.C. art. 2521, Official Revision Comment (b). The standard of diligence that must be exercised by the buyer in determining whether the thing purchased is defective is that of a prudent administrator. La. C.C. art. 2521, Official Revision Comment (c). The buyer must make more than a casual observation of the object; he must examine the thing to ascertain its soundness. La. C.C. art. 2521, Official Revision Comment (d). Testimonial proof concerning the seller's declaration of defects to the buyer, or of the buyer's knowledge of the defects, may be received. The seller need not respond for defects in the thing of which the buyer was aware, irrespective of the gravity of the defects. La. C.C. art. 2521, Official Revision Comments (e) and (f).
The warranty against redhibitory defects covers only defects that exist at the time of delivery. To make out a prima facie case of redhibition the buyer need not prove the underlying cause of the redhibitory defect involved, but only that the defect existed. The nature of a defect may allow the court to draw an inference that it existed at the time of delivery even if it appeared after three days from that time. La. C.C. art. 2530 and Official Revision Comments (b) and (c).
Regarding prescription of the redhibition action, La. C.C. art. 2534 provides, in pertinent part, as follows:
A. (2) However, when the defect is of residential or commercial immovable property, an action for redhibition against a seller who did not know of the existence of the defect prescribes in one year from the day delivery of the property was made to the buyer.
B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.
A buyer may choose to seek only reduction of the price even when the redhibitory defect is such as to give him the right to obtain rescission of the sale. In an action for rescission because of a redhibitory defect the court may limit the remedy of the buyer to a reduction of the price. La. C.C. art. 2541. The price reduction that may be demanded under this Article is the difference between the sale price and the price that a reasonable buyer would have paid if he had known of the defects. La. C.C. art. 2541, Official Revision Comment (b). A principal element in formulating a reduction of the purchase price is the cost of repairs. Sanders v. Earnest, 34,656 (La.App. 2d Cir.7/24/01), 793 So.2d 393; La. C.C. art. 2541, Official Revision Comment (d). In sales of immovables, *863 the amount to be awarded is the amount necessary to convert an unsound structure into a sound one. Id.
Article 2545 provides for the liability of a seller who knows of a hidden defect:
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. . . .

Discussion

I.
The Whiteheads argue broadly that rescission of the sale with return of their $67,000 purchase price was the appropriate remedy instead of the $9,370 diminution of the sales price which the judgment awarded. We will defer consideration of that issue for last and focus on the facts of the two major defective items which are alternatively raised by appellants' arguments.
First, the appellants argue that the trial court erred in excluding their redhibitory claim for the plumbing and sewer problem on the basis of prescription. The two rules of prescription under Civil Code Article 2534(A)(2) and (B), supra, turn on the seller's knowledge of the defect at the time of the sale. If the seller did not know of the hidden defect of the residential immovable, the action for redhibition prescribes after one year regardless of the buyer's lack of discovery during that year. La. C.C. art. 2534(A)(2). Humphrey's knowledge[1] of the alleged plumbing defects is a critical inquiry for prescription in this case since the Whiteheads filed suit nineteen months after the sale and delivery of the home. If Humphrey knew of the defect at the time of the sale, the claim for redhibition would not prescribe until the lapse of one year from the time of the Whiteheads' discovery. In this case, our review of the record indicates that factual disputes surrounded both the issue of Humphrey's knowledge of the redhibitory defect in the sewer system and the time of the Whiteheads' discovery of the problem.
After the purchase agreement was signed by the parties, but before closing, an FHA appraiser inspected the house on February 4, 2004, and noted as a "mechanical system problem," that the "[t]oilet does not function properly in rear bath and water on hot water side of lavatory does not turn on." Two weeks later, in response to the State Health Department's requirement for installation of 80 feet of field line for the sewer system, Humphrey hired Davis Contracting, Inc. which "replaced 80 feet of drain line to the septic tank and retied in the field line." Before Davis could work on the septic system, the septic tank had to be pumped out on February 10, 2004. A State Department of Health and Hospitals inspection of the septic system occurred three days before closing.
Terry Whitehead testified that when they were looking at the house to buy, the yard was a mess because all of the field lines for the sewer system had been dug up. However, he did not realize at that time that the septic tank was located under the driveway. As part of her pre-inspection of the house, Tabitha Whitehead testified that she flushed both of the toilets and they both worked.
*864 The Whiteheads' initial problem concerned the master bathroom and began three or four months after they moved into the house. When the water backed up in the main bathroom in the spring of 2004, Tabitha called Roto-Rooter to correct the flow. It was then that she learned the septic tank was located under the driveway. This meant that the traffic across the driveway could cause problems with the tank and lines.
In May 2005, Terry Whitehead started to remodel the master bath and tore out the shower and ceramic tile. The Whiteheads then began using the rear bathroom and experienced the same backing-up problem. At that time, the Whiteheads consulted Cook's Plumbing which provided the Whiteheads with an estimate totaling $12,000 which included relocation of the septic system and correction of other problems.
This evidence reveals that prior to the sale, the vendor and vendee were alerted to an issue regarding the sewer system. Corrective actions were taken, and no problems concerning the flushing of the toilets and flowage through the underground system prevented the Whiteheads from completing their purchase. From this evidence, the ruling of the trial court on prescription can be upheld from the view that neither side understood that a latent defect remained unresolved. If so, Humphrey, as a "seller who did not know of the existence of the defect," could receive the benefit of the one-year prescriptive period.
Specifically, however, the trial court's ruling rested upon its interpretation of the notice received from the initial plumbing problems of the Whiteheads in May 2004. This was over sixteen months before they filed suit. The Whiteheads argue that obtaining the services of Roto-Rooter at that time was merely a routine plumbing service matter which did not alert them to the magnitude of what was later realized as a redhibitory defect. Nevertheless, in view of the plumbing problems in advance of the sale, the trial court could determine that the May 2004 episode with the plumbing gave the Whiteheads sufficient notice of the redhibitory defect.
Accordingly, we find no manifest error in the trial court's factual determination that the Whiteheads discovered that the sewer system remained a problem with their residence in the spring of 2004, and therefore their failure to have filed suit within one year of that discovery caused prescription to run against that claim.
On the other hand, the trial court expressly found that Humphrey had knowledge of the rotten boards or sills underneath the house which were improperly repaired by Humphrey prior to the sale. The trial court ruled that this claim had not prescribed after the lapse of one year from the sale because of Humphrey's knowledge and was subject to the discovery rule under Article 2534(B). The evidence showed that the Whiteheads first discovered this problem in May 2005, five months prior to suit.
In their next assignment of error, the Whiteheads argue that the trial court's determination for prescription purposes that Humphrey was a "seller who knew of the existence of the defect," placed him in the category of the so-called bad faith seller entitling them to attorney's fees under Civil Code Article 2545. While this contention is correct, Humphrey counters by pointing out that the Whiteheads' petition did not seek attorney's fees and the trial court was never required to rule on the issue of attorney's fees. Humphrey raises URCA Rule 1-3 which provides that "[t]he Courts of Appeal will review only *865 issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." Also, we note in considering this situation that La. C.C.P. art. 2164 directs the appellate court to "render any judgment which is just, legal, and proper upon the record on appeal." Official Revision Comment (a) to Article 2164 states, in part, that "the purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below. This article insures that the `theory of a case' doctrine . . . is not applicable to appeals under this Code." See, Boudreaux v. Mazda Motors of America, Inc., 347 So.2d 504 (La.App. 4th Cir.1977), writ denied, 350 So.2d 1223 (La.1977).
In this case, while it is true that a prayer for attorney's fees was never made and the trial court was never directed to such claim, the trial court expressly addressed and decided the factual issue of Humphrey's knowledge of the rotten sills upon which hinge both prescription and the enhanced remedies against the "bad faith" seller.[2] Once that factual determination was made, the remedy of the award of attorney's fees against the so-called bad faith seller is not discretionary under Article 2545 and was the just, legal and proper remedy under the decided facts. Since the trial court would have discretion in fixing the amount of reasonable attorney's fees and was never asked to so decide, we will award the minimum for attorney's fees for the trial of this case in the amount of $2,500.

II.
The trial court's judgment refused to rescind the sale and awarded a reduction in price based upon the cost of repairs of the defects in the fireplace and the wooden sills. From our review of the nature of these two defects, we find that the court properly used its discretion in rejecting rescission, and appellants' assignment of error seeking rescission and return of the sale price is without merit.
In Sanders v. Earnest, supra, this court compared the remedies of rescission and reduction of the purchase price in a case where a persistent defect in a home presented a much closer question. Nevertheless, the court affirmed the trial court's award of the remedy of reduction in the purchase price based upon the trial court's discretionary allowance for such remedy under Civil Code Article 2541. In this case, the defects which were found not to have prescribed could be repaired with relative ease, and no issue was made regarding the Whiteheads' ability to completely correct the problems. The costs of those repairs were a small fraction of the sale price. Accordingly, we find no abuse of discretion, and the ruling of the trial court refusing to rescind the sale is affirmed.

Conclusion
We affirm the trial court's conclusions concerning the various redhibitory defects affecting the home purchased by appellants. The trial court's damage award for these defects involved vices known to the seller which entitle appellants to an award for attorney's fees. We therefore amend the judgment to include a $2,500 award for *866 attorney's fees. Costs of appeal are assessed equally to the parties.
JUDGMENT AMENDED AND AFFIRMED.
NOTES
[1] La. C.C. art. 2534(B)'s reference to the "presumed" knowledge of a seller would not be applicable here. The codal scheme indicates that the seller is presumed to know the defect of the thing sold when he is a manufacturer of that thing. La. C.C. art. 2545.
[2] Had there been any unaddressed fact controversy about the entitlement to attorney's fees, consideration of an initial award at the appellate level would be improper. See, Aguilar v. Transit Management of Southeast Louisiana, Inc., 04-1027 (La.App. 5th Cir.3/1/05), 900 So.2d 65.