968 So.2d 337 (2007)
Paul Francis FISHER, II & Toby Segal Fisher, Plaintiff-Appellant
v.
Caryn BATISTA, Winner Circle Homes, Todd Bice d/b/a Housemaster Home Inspections & Neil Yarborough, Defendant-Appellee.
No. 42,642-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
*338 David L. White, Bossier City, for Plaintiff-Appellant, Paul Francis Fisher, II.
R. Lane Pittard, Benton, for Defendant-Appellee, Neill Yarborough.
Before WILLIAMS, GASKINS and LOLLEY, JJ.
GASKINS, J.
The remaining plaintiff in this redhibition/quanti minoris suit appeals from a trial court judgment which awarded what he believes are inadequate damages of only $2,000 and which failed to award mental anguish damages or attorney fees. We affirm.

FACTS
In February 2003, the plaintiffs, Paul Francis Fisher II and Toby Segal Fisher, purchased a house on Conrad Street in Bossier City from Neill Yarborough for $109,300. A systems inspection of the home conducted prior to the sale found the plumbing to be satisfactory. Shortly thereafter, the plaintiffs encountered problems with various aspects of the house, including the plumbing. Sinks backed up a few times, and sewage backed up into the master bathroom on one occasion.
In February 2004, the Fishers sued Yarborough.[1] Yarborough filed a general denial in which he alleged that the plaintiffs failed to adequately inspect the property prior to the sale, to provide him with written objections in a timely manner under the contract, or to make a claim under a home warranty policy paid for by him.[2]
By the time the case was tried before a judge in September 2006, the Fisher couple had divorced with the husband receiving the wife's interest in the suit in their community property settlement. Thus, Fisher and Yarborough were the only remaining parties in the suit. The only issue tried before the court was the plumbing problem.
In addition to his own testimony, Fisher presented that of Mrs. Fisher, his former wife; Vincent Parker, a drain technician for Cornell Plumbing Super Rooter, Inc., who unstopped the kitchen sink twice in March 2003; and Kenny Sewell, the vice president of Cochran Construction Company. Sewell estimated that in 2003 it would have cost $24,917 to repair portions of the house that would have to be damaged in the course of making plumbing repairs; however, he testified at trial that the price would now have increased by 50 percent. By deposition at a later date, Samuel Byrd, the plumbing service manager for Payne Mechanical Services, gave an estimate of $29,718 to repair the plumbing. Yarborough testified on his own behalf and *339 presented the deposition testimony of Todd Bice, who inspected the house prior to sale.
In December 2006, the trial court issued written reasons in which it rendered judgment in favor of Fisher in the amount of $2,000. The court found that the price reduction and damages sought by Fisher were "greatly exaggerated." While acknowledging that the house  which it characterized as "old"  had a plumbing problem which would require a plumber once or twice a year, the trial court rejected testimony that repairs would cost in excess of $20,000. The court found that allowing the recovery sought would essentially be placing the plaintiff "in a new house with new house plumbing." Additionally, the court found no evidence of bad faith on the part of Yarborough. Costs were assessed to the defendant. Judgment in conformity with the judge's written reasons was signed on January 9, 2007. Each litigant was directed to pay his own attorney fees.
Fisher appealed.

LAW
A seller warrants the buyer against redhibitory defects or vices in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives the buyer the right to obtain rescission of the sale. A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of the buyer to a reduction of the price. La. C.C. art. 2520.
The implied warranty against redhibitory defects covers only hidden defects, not defects that were known to the buyer at the time of the sale, or that should have been discovered by a reasonably prudent buyer. La. C.C. art. 2521.
A buyer may choose to seek only reduction of the price even when the redhibitory defect is such as to give him the right to obtain rescission of the sale. In an action for rescission because of a redhibitory defect the court may limit the remedy of the buyer to a reduction of the price. La. C.C. art. 2541. One of the principal elements in formulating a reduction of the purchase price is the cost of repairs. La. C.C. art. 2541, Official Revision Comment (c).
The purchaser has the burden of proving the amount of reduction in the purchase price with reasonable certainty. The trial judge is afforded much discretion in determining the amount of the reduction. The general rule for the measurement of damages in quanti minoris actions is the determination of the difference between the value of the defective thing at the time of the sale and the value as warranted by the seller. When real estate is involved, the allowable diminution should be the amount necessary to convert the unsound structure into a sound one. Dodd v. Tucker, 528 So.2d 644 (La.App. 2d Cir.1988).
In general, a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The existence of a redhibitory defect is a question of fact which cannot be disturbed unless the record establishes that the finding is manifestly erroneous. Dage v. Obed, 40,414 (La.App.2d Cir.12/14/05), 917 So.2d 713.
*340 Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. Marsh v. USAgencies Casualty Insurance Company, 42,176 (La.App.2d Cir.5/16/07), 957 So.2d 901. The trier of fact may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. Green v. K-Mart Corporation, 2003-2495 (La.5/25/04), 874 So.2d 838.

DISCUSSION
On appeal, Fisher seeks damages of $67,093.50, i.e., $29,718 (Payne estimate), and $24,917 (initial Cochran estimate), plus $12,458.50 (50% increase on Cochran estimate). He also requests attorney fees of $15,000 and mental anguish damages of $10,000.
The evidence presented at trial demonstrated that Fisher experienced problems with the plumbing in three different areas: (1) the kitchen sink; (2) under the house; and (3) the clay pipe running from the house to the street.

Kitchen sink
In March 2003, Mrs. Fisher experienced black sludge backing up in the kitchen sink. She called Cornell Plumbing which sent a drain technician to unstop the kitchen sink and the washing machine line which apparently shared a common vent. According to the drain technician, the sink was stopped up as a result of sludge that had built up in the line over time. He testified that when dealing with such a situation, there is only a problem if "I pull back mud," which would be indicative of a hole in the pipe, and that he did not pull back mud when snaking out the drain. Later that same month, a similar incident occurred, and the same drain technician was dispatched to the house on a free warranty call.
In January 2004, Payne Mechanical Services unstopped the washing machine drain. In May 2004, Payne unstopped the kitchen sink and reworked the sink drain. There were no subsequent service calls pertaining to the kitchen.
Byrd was unable to explain why the kitchen sink stopped up. As a result, he was unable to attribute it to a defect in existence at the time of the sale. The trial court did not find that this handful of minor incidents demonstrated a problem with the kitchen sink which required correction, particularly the costly rerouting proposed by Byrd. We agree.

Under the house
In August 2003, Payne was called to unstop the sewer line after sewage backed up in the master bathroom. A camera was run into the line; however, due to rust build-up in the four-inch line, the two-and-a-half inch camera was not able to successfully traverse the line. According to Byrd, the camera hung up 31 feet into the line. In his opinion, there is no actual blockage; rather something in the bottom of the line is obstructing the flow of water. He admitted that he had no way of knowing what the obstruction is, exactly where it is, or when it got there. He could not say if the alleged defects in the plumbing were present in December 2002, when Yarborough signed a seller's property condition statement in which he attested that, to his knowledge, there was no defect or problem with the plumbing. He also admitted that he could not say if the blockage was there when Bice conducted his inspection in January 2003. Nor could he say that it was in existence on the date of sale in February 2003. However, he did not believe that it would have developed in a period of "just several months."
Payne's records show that it returned to the house in January 2004 to perform several tasks; the ticket notes "stoppage *341 found beneath house." In September 2004, Payne unstopped the sewer line; however, Byrd could not say if this was related to the alleged obstruction under the house or the tree roots getting into the clay pipes in front of the house.
The testimony pertaining to the alleged obstruction under the house is, at best, speculative and uncertain. Byrd is unable to say what it is or where it is. Nor can he say how long it had been there. The records from Payne reveal only two service calls that can be attributed to it with any certainly. Furthermore, like the trial court, we find the proposed repairs and their costs to be "greatly exaggerated." Because Byrd could not say what problem existed or where it was, the repair estimates included many items which he admitted might be unnecessary. Some of the proposed "repairs" included in Cochran's and Payne's estimates  new cabinets, countertops, toilets, sink, lavatories and vanities  would actually constitute remodeling of this house which was built in about 1969.
Based upon the evidence in this record, we find no manifest error in the trial court's rejection of this portion of the plaintiff's demands.

Clay pipe
At the time the house was constructed, use of clay pipes from the house to the street was common; now PVC pipes are used. While the clay pipe at the instant house appeared to be in fair shape, Byrd testified that roots were growing into it around the joints. As a result, in fall and spring, when the tree roots grow, the clay pipe is susceptible to becoming stopped up. Yarborough testified that over the years he had had to periodically call a plumber to clean out the roots. After Fisher acquired the house, he likewise had to have the line cleaned out on occasion. Payne performed this service for him in January 2004 and October 2005. (While there is an invoice for unstopping a sewer line in September 2004, Byrd was unable to clarify whether this was connected to the clay pipe or not.) There was also evidence that the clay pipe had separated slightly from the cast iron pipe leading into the house.
The trial court properly found that there was a plumbing defect. However, the evidence presented at trial does not demonstrate that the plumbing problems with this house, which was far from new, were anywhere as extreme as Fisher suggested. To the contrary, we agree with the trial court that a fair evaluation of the evidence  and the application of common sense  show a more minor situation which could be attributed at least partially to the age of the house and its systems.

Award amount
Fisher contends that the trial court made a mathematical error in its calculation of the $2,000 award and, under the formula set forth in its written reasons, the amount awarded should actually be $4,000.
In its written reasons for judgment, the trial court stated the following:
"The Court believes that a plumbing defect did exist in the house when it was sold. However, the court does not believe that a plumbing problem, which requires a plumber [once] or twice a year, at the price of perhaps $150.00 for twice a year, would require a quanti minoris claim in the amount of $21,915.00.
. . .
This Court believes that, from time to time, the plaintiff will, of necessity, have to call the plumbers out to repair plumbing problems in the house. After all, this is an old house. If the plumber were called out four times a year at *342 $200.00 per visit the price for 5 year plumbing maintenance would equal $2,000.00. The Court is called upon to do justice in this case not impose an outrageous remedy. The Court believes that an award of $2,000.00 would be sufficient to place the plaintiff whole in this matter."
The judgment signed by the trial court awarded damages in the amount of $2,000.
Obviously, four plumbing calls per year at a cost of $200 per visit for five years would total $4,000. However, we note that the trial court also stated that plumbing calls would be necessary perhaps once or twice per year at $150 per visit. The evidence in the record does not support four plumbing calls per year; rather it indicates, at most, twice per year when the tree roots grow and possible invade the joints of the clay pipe.
We find that the award of $2,000 is supported by the record. Accordingly, we affirm the trial court judgment as written.

Good faith
Fisher argues that since Yarborough testified that he called out a plumber eight to 10 times during the 31-year period he owned the house, the trial court erred in not finding that Yarborough was in bad faith.
In contrast to a good faith seller, a seller who knew of a defect and failed to disclose it is liable to the buyer for the return of the purchase price with interest from the date of the payment, reimbursement of reasonable expenses occasioned by the sale and expenses incurred in preserving the thing, as well as damages and reasonable attorney fees. The seller is entitled to credit for use the buyer makes of the thing. La. C.C. art. 2545.
The trial court has great discretion in finding facts and assessing the witnesses' credibility. Those findings should not be disturbed absent a showing of manifest error; a reasonable trial court finding cannot be reversed merely because the appellate court could draw an equally reasonable yet different finding. Sanders v. Earnest, 34,656 (La.App.2d Cir.7/24/01), 793 So.2d 393.
The trial court found no evidence of bad faith on the part of Yarborough. We agree. The fact that he called a plumber to unclog a drain or clean out tree roots 10 or fewer times in a period of more than three decades is not indicative of knowledge of a systemic defect with the house's plumbing. To the contrary, it is more akin to regular maintenance of the house's plumbing system over an extended period of time. We further note that in his testimony, Fisher himself stated that he was not saying Yarborough "concealed anything."

CONCLUSION
We affirm the trial court judgment. Costs of this appeal are assessed to the appellant, Paul Francis Fisher II.
AFFIRMED.
NOTES
[1] The Fishers also filed suit against several others, including a real estate agent and a home inspector. However, these additional parties were dismissed prior to trial and are irrelevant to the issues presented in this appeal.
[2] Yarborough filed a third-party claim against the company that issued the home warranty policy covering the house. This claim was resolved prior to trial.