984 So.2d 156 (2008)
Joel and Debra ROYAL
v.
Patsy J. COOK and Greater New Orleans Home Service, Inc.
No. 2007-CA-1465.
Court of Appeal of Louisiana, Fourth Circuit.
April 23, 2008.
*159 Michael D. Clement, Law Offices of Michael D. Clement, Belle Chase, LA, for Plaintiffs/Appellees.
Michael J. Rocks, Gretna, LA, for Patsy J. Cook.
(Court composed of Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR.[*]).
MAX N. TOBIAS, JR., Judge.
The defendant, Patsy Cook ("Cook"), appeals the trial court's judgment in favor of Debra and Joel Royal ("the Royals") on their claim for redhibition and breach of contract.[1] After reviewing the record, we affirm the trial court's judgment.

BACKGROUND
On 21 July 2003, Cook sold to the Royals a home located at 121 Rho Street in Belle Chasse, Louisiana, (the "property"). The Royals, having moved from Puerto Rico, were relocating to Belle Chasse for work-related *160 reasons. After Joel Royal made an initial walk-through of the home, the parties entered into an Agreement to Purchase/Sell the property (the "Agreement") on 9 May 2003.[2] The Agreement, which did not contain an "as is" clause, granted the Royals the right to have the property inspected prior to purchase; if the inspection revealed deficiencies, the Royals were given the right to advise Cook of the deficiencies and request that they be remedied. After notification, Cook had the option to either remedy or refuse to remedy the deficiencies. If Cook refused to remedy the deficiencies, the Royals could accept the property in its then present (deficient) condition or void the Agreement.
The Royals retained Greater New Orleans Home Service, Inc. ("GNOHS") to inspect the property on their behalf. At the time of the inspection, Cook occupied the premises. On 15 May 2003, GNOHS issued a home inspection report specifying the deficiencies and stating recommendations for repair. Both parties received a copy of the report. The Royals provided a letter to Cook addressing the deficiencies identified by GNOHS and requesting that all repairs be made in accordance with the recommendations.
Subsequently, the parties negotiated what repairs would be made, how the repairs were to be made, and what compensation would be given in lieu of repairs. All negotiations took place through the parties' dual real estate agent, Robert Hallas ("Hallas"). On 13 June 2003, Cook, Joel Royal, and Hallas each signed a contract specifying the repairs to be made to the property, including an itemized list of those items that would be remedied by Cook prior to the act of sale, and those items that Cook agreed to monetarily compensate for in lieu of repair. The agreed upon list of repairs included:
1) Soffit and fascia (repair loose and dented/damaged per inspection)
2) Electrical system (repair per inspection)
3) Water heater re-installed (correctly install per inspection)
4) Air conditioner system mechanical problems (repair per inspection)
5) Roof and breeze-way concerns
The contract further provided that compensation was to be paid to the Royals for the installation of attic insulation and air conditioning ducts, including $400.00 to be paid by Cook after all repairs were completed, and $1,400.00 to be paid by Hallas to cover extra expenses following the act of sale. Also, the contract provided that Cook would transfer all warranties to the Royals, and supply information regarding the drain system repair.[3]
*161 Following representations by Cook that all of the agreed upon repairs had been completed, on 21 July 2003, the parties executed a cash sale for the price of $180,000.00, which included a waiver of redhibition. The Royals contend that after moving into the home, they discovered that Cook failed to properly repair the deficiencies agreed to in the 13 June 2003 contract. Additionally, they discovered a number of other defects in the property, which they claim were known to Cook, but were intentionally and/or fraudulently hidden from them or not disclosed at the time of signing the Agreement or prior to the closing.
On 19 July 2004, the Royals filed the instant suit against Cook and GNOHS[4] alleging redhibition, breach of contract, fraud, and damages arising out of the sale of the property. Following a two-day bench trial, the trial court rendered judgment in favor of the Royals and against Cook as follows: $20,244.00, with legal interest from date of judicial demand until paid, for rodent infestation and remediation; $7,545.00 for attorney's fees and court costs; and $8,432.00 for breach of contract. This appeal followed.

DISCUSSION
We first note that in Louisiana, a court of appeal should not set aside the factual findings of a trial court absent manifest error or unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Redhibition Claim
Cook sets forth four assignments of error relative to the Royals' redhibition claim: the trial court erred (1) by concluding that a rodent problem constitutes a redhibitory defect, and that the rodent problem was not apparent on ordinary inspection; (2) by concluding that Cook committed fraud; (3) in awarding damages for redhibitory defects where the Royals failed to meet their burden of establishing the measure of damages; and (4) by awarding attorney's fees.
In Louisiana, "[t]he seller warrants the buyer against redhibitory defects or vices in the thing sold." La. C.C. art. 2520. A defect is redhibitory when it "renders the thing useless, or its use so inconvenient that it must be presumed that the buyer would not have bought the thing had he known of the defect." Id. The existence of this type of redhibitory defect provides the buyer with the right to obtain rescission of the sale. Id. A thing can also contain a redhibitory defect when the defect "diminishes its usefulness or its value so that it must be presumed the buyer would still have bought it, but for a lesser price." Id. This type of redhibitory defect limits the right of a buyer to seek a reduction of the price. Id. Pursuant to La. C.C. art. 2530, the warranty extends only to defects that exist at the time of delivery, and there is a presumption that the defect existed at delivery if the defect appears within three days of delivery. Proof that a redhibitory defect existed at the time of sale can be made by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of sale. Boos v. Benson Jeep-Eagle Co., Inc., 98-1424, p. 3 (La.App. 4 Cir. 6/24/98), 717 So.2d 661, 663. Further, under La. C.C. art. 2521, the seller owes no warranty for defects that were known to the buyer at the time of the sale or for defects that should have been discovered by a reasonably prudent buyer. La. C.C. art. 2522 requires that the buyer must give the seller notice of a redhibitory defect and allow time for the seller to repair the defect; however, if the seller has actual *162 knowledge of the defect, then no notice is required.
While the Royals' petition asserts a claim for a rescission of the sale, and in the alternative, a reduction in the purchase price, our review of the record indicates that the Royals' claim in redhibition is actually limited to a claim for a reduction in the purchase price. The Royals alleged redhibitory defects in the water heater, air conditioner, dishwasher, carpet (stains), kitchen plumbing, backyard swing, and living room wall (resulting from a hole). The trial court concluded that these problems did not constitute redhibitory defects in the home as the Royals or GNOHS either had, or should have had, notice of these issues from the pre-sale inspection of the home. These rulings by the trial court are not at issue on appeal; the only redhibition claim at issue herein involves rat infestation.
1. The Rodent Problem
Cook avers the trial court erred in determining that rodent infestation constitutes a defect entitling the Royals to recover under a theory of redhibition because there was no evidence that the house was "structurally unsound," that repairs were needed, or that repairs were made, which Cook contends must be established in redhibitory actions involving the sale of real estate. Additionally, Cook contends that, to the extent a rodent problem did exist,[5] the trial court erred in finding that the problem was not apparent on ordinary inspection prior to purchase, precluding recovery in redhibition.
While we recognize that prior decisions from this court have looked at "structural soundness" in determining the measure of an award in an action for reduction in purchase price due to a redhibitory defect, no requirement exists that the buyer prove the defect renders the property structurally unsound in order to recover in a redhibitory action against the seller as contained in Book III, Title VII, Chapter 9 of the Louisiana Civil Code entitled, "Redhibition."[6] Further, while section (d) of the Revision Comments following La. C.C. art. 2541 states that "[i]n sales of immovable property the amount to be awarded is the amount necessary to convert an unsound structure into a sound one," this comment neither defines what constitutes a redhibitory defect, nor has the effect of law as to calculating the reduction in price of an immovable resulting from a redhibitory defect.[7] As noted above, La. C.C. art. *163 2520 specifically defines a redhibitory defect as follows: "[a] defect is redhibitory . . . when . . . it diminishes [the thing's] value so that it must be presumed that a buyer would still have bought it but for a lesser price." Thus, the issue before us is whether the rodent problem diminished the value of the home such that the Royals would have purchased the property, but for a lesser price.
The evidence established an abundance of rat feces was discovered in and beneath the attic insulation and in the walls of the property within days of the act of sale, and that the Royals personally witnessed several rats hop onto the roof of the property, enter the attic through the eves, and heard the rats scurrying about in the attic. Thereafter, the Royals placed rat traps in the attic. They testified that they caught at least 10 rats, and removed approximately 20 dead rats and carcasses in various stages of decomposition from underneath the insulation and attic floor decking. Further, the record contains evidence that repairs were made and that steps were taken by the Royals to clean and disinfect the affected areas, and remediating any bio-hazard caused by the decaying rats and rat feces. They also obtained an estimate to disinfect the walls and other affected areas. Moreover, Joel and Debra Royal each testified that, had they known that a rat problem existed in the attic and walls prior to their purchase of the property, they would not have gone through with the act of sale. The record also contains testimony that in attempting to sell the property, upon disclosing to prospective buyers of the previous rodent infestation, the Royals had received no viable offers to purchase as of the time of trial.
The trial court, citing La. C.C. art. 2520, determined that "rodent infestation, in any form, could diminish the value of a home such that the buyer might have still bought it, but for a lower price." We agree with this conclusion. This court takes judicial notice that rodents can gnaw through wood, electrical wiring, sheetrock, et cetera, causing an imperfection or redhibitory defect in real property within the meaning of La. C.C. art. 2520. Based on our review of the evidence, we cannot say that the decision of the trial court finding that the rat infestation at issue constituted a vice or defect in the property was manifestly erroneous or clearly wrong.
However, not all redhibitory vices or defects justify rescission or reduction of the price. Apparent defects, which the buyer can discover through a simple inspection, are excluded from the seller's legal warranty. La. C.C. art. 2521.[8] A defect is apparent if a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the property. David v. Thibodeaux, 04-0976, p. 3 (La.App. 1 Cir. 5/11/05), 916 So.2d 214, 217. Factors to be considered in determining whether an inspection is reasonable include knowledge and expertise of the buyer, the opportunity for inspection, and assurances made by the seller. Crowe v. Laurie, 98-0648, p. 6 (La.App. 1 Cir.2/19/99), 729 So.2d 703, 707-708. Whether a defect is apparent to the buyer of a home by reasonable inspection is a question of fact. See David, 04-0976, p. 3, 916 So.2d at 217.
In the instant case, Cook avers that the Royals, seasoned home buyers, failed to conduct a reasonable inspection of the property prior to sale, which would have revealed a rodent problem in the attic *164 necessitating further inspection. The record reveals that, at the time of the execution of the Agreement, the Royals were stationed and residing in Puerto Rico. Joel Royal had come to Belle Chasse in May 2003 on military orders, and while there, looked to purchase a house for his family due to his impending reassignment to the area. He testified that he first viewed Cook's house with an agent and that Cook was not present. Candles were burning in the home. During this initial visit, Mr. Royal testified that his main objective was to ascertain whether the floor plan and square footage of the home would accommodate his family's needs. He briefly viewed the house a second time prior to his return to Puerto Rico. Despite his request that no artificial fragrances be used, again candles were burning. On one of the two visits, Mr. Royal briefly looked at the attic, but he did so to determine if it had storage space. He did not notice any fecal matter or smell a foul odor. Mr. Royal's testimony was that Cook was not present on this second occasion. According to Mr. Royal, he briefly met Cook for the first time at the agent's office for purposes of signing the Agreement.[9]
The Royals retained GNOHS to perform the professional inspection of the property prior to sale. Under the circumstances, we find it was not unreasonable for the Royals to rely on the professional services of an inspection company (rather than their own) to inspect the property for possible defects or deficiencies. This professional inspection included an inspection of the attic, which noted that the insulation was thinning and needed to be replaced. The GNOHS report, however, was devoid of any mention of observable rodent feces or the presence of rat poison bags in the attic suggestive of rodent infestation. Further, the record establishes that the rat carcasses, which were found in various stages of decomposition by the Royals after the act of sale when they were removing the attic insulation, as well as different bags of rat poison, were nestled and/or covered up by insulation alone, or by plywood decking (forming the attic floor) covering the insulation. Testimony and photographs further show that extensive amounts of rodent feces were in the walls and behind baseboards in several areas; this was discovered by the Royals within days of moving in after they commenced renovations.[10]
The trial court concluded that the Royals "did not know of the rodent infestation and that a reasonably prudent buyer would not have known of the infestation," because "the extent of the infestation was clearly hidden to a reasonably prudent buyer." The trial court further determined that "most reasonably prudent buyers would not remove baseboards or open walls to see if rodents and/or rodent feces are located in those places." The record supports the trial court's finding. We are also of the opinion that the rodent infestation could not have been discovered by simple inspection. It was necessary to remove the attic insulation, baseboards, and drywall to see the damage.[11] Accordingly, we do not find that the trial court was manifestly erroneous or clearly wrong *165 in its finding that the rodent infestation constituted a redhibitory defect that was not apparent to the Royals prior to the act of sale.[12]
2. Fraud
Cook avers the trial court erred in concluding the Royals carried their burden of proving that she fraudulently concealed information regarding the rodent infestation vitiating the "as is" or waiver of redhibition clause contained in the act of sale. Cook also contends that, due to the "lack of fraud" on her part, the Royals were required to provide her with notice of, and an opportunity to correct, any redhibitory defect. After reviewing the evidence, we affirm the trial court's finding that Cook had knowledge of the rodent problem and failed to disclose it, thereby negating any requirement that the Royals may otherwise have had to give her notice and/or an opportunity to remedy the defect.
Pursuant to La. C.C. art. 2548, parties can exclude or limit the warranty against redhibitory defects. In order to be effective, a waiver of warranty must (1) be written in clear and unambiguous terms; (2) be contained in the contract; and, (3) either be brought to the attention of the buyer or explained to him. Mitchell v. Popiwchak, 95-1423, p. 4 (La.App. 4 Cir. 6/26/96), 677 So.2d 1050, 1053. We find the trial court correctly found the waiver of redhibition to be effective and valid on its face; the clause was clearly and unambiguously stated in the act of sale, and contained an executed acknowledgment stating that the clause was explained, read, and understood by the Royals.
But, even where the waiver is sufficient as to form and to attract the attention of the purchaser, it may not be effective where the seller knew or should have known of the defect and failed to declare it. Specifically, La. C.C. art. 2548 provides, in part, that "[a] buyer is not bound by an otherwise effective exclusion or limitation of warranty when the seller has declared that the thing has a quality that he knew it did not have." In Boos, 98-1424, p. 6, 717 So.2d at 665, citing Helwick v. Montgomery Ventures, Ltd., 95-0765, p. 6 (La.App. 4 Cir. 12/14/95), 665 So.2d 1303, 1306, we held:
A seller with knowledge of a redhibitory defect who, rather than informing the buyer of the defect, opts to obtain a waiver of the warranty implied by law, commits fraud, which vitiates the waiver because it is not made in good faith.
Additionally, in redhibition, a seller is in bad faith when he knows of the defect in the property that is the subject of the sale but fails to advise the purchaser of the problem. La. C.C. art. 2545.[13] Louisiana *166 law requires that a contract must be formed in good faith. La. C.C. art. 1983. Fraud can result from silence and inaction. La. C.C. art. 1953.[14]
As noted above, the record establishes that it was not until after the Royals took possession of the home that they begin to notice a foul odor coming from the attic. At about the same time, they witnessed rodents entering the attic through a loose soffit, and heard scratching sounds. Thereafter, when removing the attic insulation, they discovered rodent feces hidden underneath it, in addition to several brands of rat poison of different ages, urine stains, and numerous rodent carcasses in varying stages of decomposition. Additionally, Debra Royal discovered an abundance of rat feces "pouring out of the walls," when she removed baseboards inside the home and in the garage during renovations. The Royals trapped several live rats and removed even more dead ones from underneath the insulation and plywood flooring in the attic.
The record also contains the testimony of Cook wherein she admitted that she did not disclose any information about prior rodent problems, because it did not occur to her to do so. Cook contends that in or about 1987 or 1988, she experienced a one-time problem with rats in the attic. She claims she placed rat poison in the attic and the rodent issue abated with no further problems; however, she did see a rat carcass, several bags of rat poison, and removed two rat traps when she was moving her things out of the attic around the time of the sale. She further claims that she told Mr. Royal about the issue with the rats on the first day that he looked at the property.[15]
Cook's son, Kim Cook, testified to having seen mice on occasion while he was living in the home prior to 1979. He recalls having placed poison and mouse traps in the attic. He also testified that he recalled seeing the rat poison bags in the attic following his father's death, but did not know when the poison was placed in the attic or by whom.
The trial court found the following as stated in its reasons for judgment:
[T]his court finds that Mrs. Cook knew about a rodent problem. In addition, this court finds that Mrs. Cook did not warn the Royals of this problem. Finally, the court finds that Mrs. Cook may have attempted to mask the problem, by burning candles, and by hiding rat poison in the insulation. Mrs. Cook may not have known the full extent of the problem, but she was aware that a rat carcass was in the attic and that she had at least once previously had a problem. In addition, the fact that multiple packets of rat poison of varying ages and brands were found, leads this court to believe it was not a one time problem. Therefore, the court does not find Mrs. Cook's testimony regarding only one prior incident with rodents credible. Since this court finds that Mrs. Cook had knowledge of the problem, there is no requirement for the plaintiffs to give notice to Mrs. Cook.[16]
*167 We do not find that the trial court was manifestly erroneous or clearly wrong in its determination that Cook was not a seller in good faith, obviating the requirement that the Royals give her notice of the rodent problem and an opportunity to fix it. When two permissible views of the evidence exist, the fact finders choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). This assignment is without merit.
3. Redhibition Damages
At trial, the Royals sought a reduction in the purchase price of the property due to the redhibitory defects pursuant to La. C.C. art. 2541. The reduction in price that may be demanded is the difference between the sale price and the price that a reasonable buyer would have paid if he had known of the defect. Capitol City Leasing Corp. v. Hill, 404 So.2d 935 (La. 1981). Additionally, the proper measure of recovery is the amount necessary to convert the unsound structure to a sound one. Maguire v. Masino, 325 So.2d 844, 847 (La.App. 4 Cir.1975). A principal element in formulating the amount of the reduction in the purchase price, is the cost of repairs. Whitehead v. Humphrey, 42,078, p. 5 (La.App. 2 Cir. 4/4/07), 954 So.2d 859, 862-863. If the defects are few in number and quickly and simply remedied, the cost of repairs may well be the only consideration. Menville v. Stephens Chevrolet, Inc., 300 So.2d 858, 861-62 (La.App. 4 Cir.1974).
The purchaser has the burden of proving the amount of reduction in the purchase price with reasonable certainty. Fisher v. Batista, 42,642, p. 4 (La.App. 2 Cir. 10/24/07), 968 So.2d 337, 339. However, when damages are insusceptible of precise measurement, much discretion is left to the trial court for the assessment of these damages. La. C.C. art. 1999. See also LeMoine v. Hebert, 395 So.2d 353, 355 (La.App. 1 Cir.1980). The assessment of damages is a determination of fact, and shall not be set aside absent an abuse of discretion. Rosell, 549 So.2d at 844. The role of an appellate court in reviewing an award of damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. The award should be determined by facts or circumstances particular to the case under consideration. Corbello v. Iowa Production, 02-0826, p. 10 (La.2/25/03), 850 So.2d 686, 696.
As a direct result of the rodent infestation, the trial court awarded the Royals $540.00 to remove the attic insulation, $954.00 for replacement of the insulation, $14,250.00 to remediate the walls, and $4,500.00 to remediate the attic. On appeal, Cook claims the record contains no evidence to support the trial court's determination as to the calculation of damages. Specifically, Cook contends that because the Royals failed to introduce evidence that they actually spent the awarded amounts to remediate the rat infestation problem, they have not carried their burden of proof as to damages. We disagree.
We first note that no requirement exists in Louisiana that a claimant expend his own money to complete repairs, or that he even obligate himself to make the repairs before an award for the damage occasioned can be made. In other words, Cook would have the court excuse her from liability for her failure to disclose a nonapparent defect simply because the Royals have not completed the remediation work. A claimant, however, is not bound to use the money from a judgment to remediate the property; nonetheless, the wrongdoer is liable for the damage. See *168 Corbello, 02-0826, pp. 16-17, 850 So.2d at 699.
To substantiate the amount of damages awarded, the Royals introduced into evidence, without objection from Cook, a proposal from Advance Contracting Services, Inc., showing the cost to remove and dispose of the insulation in the attic as $540.00, and the cost to replace insulation to be $954.00. Mr. and Mrs. Royal each testified that they actually paid the $540.00 to have the insulation removed, but had not replaced the insulation. We find the record contains sufficient proof substantiating the award to remove and replace the attic insulation due to the rodent infestation and, accordingly, affirm the trial court's award.
The Royals also introduced into evidence, without objection from Cook, two estimates submitted by Gill Industries, Ltd., reflecting the cost to professionally remediate the attic of rodent infestation to be $4,500.00 and $14,250.00 to remediate the walls. Cook contends the evidence at trial indicates remediation efforts to the walls was not "necessary." While testimony establishes that the rodent feces found in the walls was "contained" therein and did not pose a threat of a bio-hazardous condition unless the walls were breached, we note testimony that the Royals engaged in extensive renovations to the home involving breaches in the wall, therefore posing such a threat. It is also reasonable to assume that any future purchaser of the property would also potentially be exposed to this same condition if not remediated. The trial court, in awarding the cost to remediate the attic and walls, heard the testimony of the parties, reviewed the photographs, and considered the documents submitted into evidence without objection from Cook. Based on our review of the record, we find no basis for concluding the trial court abused its discretion in awarding damages for this rodent infestation remediation.
4. Attorney's Fees
La. C.C. art. 2545 allows for an award of attorney's fees in the event a seller is deemed to have known of the defect and fails to declare it. The trial court discredited Cook's testimony of a one-time problem with rats, and further determined that she failed to disclose the problem to the Royals. As we have affirmed these findings, we, likewise, find the trial court properly awarded attorney's fees in this case. Accordingly, this assignment of error is without merit.
Breach of Contract Claim
The parties entered into a contract outlining repairs to be made to the home in accordance with the GNOHS home inspection report as a condition of the sale. The trial court determined that, while there were three separate versions of the contract for repairs, the one signed by both of the parties was a binding and enforceable contract. Cook does not appeal the validity or enforceability of this contract. Rather, in Cook's final assignment of error, she contends the trial court erred in finding that she breached the contract, or alternatively, by awarding damages not established by competent evidence.
The contract listed nine items for repair and two reimbursement items. Prior to the act of sale, Cook represented to the Royals that all repairs had been made as agreed upon. The Royals were allowed a "walk through" to inspect the home prior to the closing, during which Mr. Royal noticed a problem with the electrical wiring. Once the Royals took possession of the home, they noticed other deficiencies in the agreed upon repairs prompting them to have GNOHS conduct a re-inspection. A re-inspection report was submitted *169 by GNOHS noting the deficiencies in the hot water heater and the electrical system.[17] At trial, the Royals testified that as a result of the improper repairs, they had to contract with licensed professionals to properly perform the work. Mr. Royal testified to the contractor's invoices verifying the amounts he paid to have repairs made to the electrical system, the air conditioner, and the water heater.
Having determined that the contract between the parties was valid and enforceable, and finding that Cook breached the contract by failing to perform the repairs in accordance with the GNOHS inspection report, the trial court awarded the Royals $2,792.00 for B & B Electric to complete the electrical repairs; $4,100.00 for repairs to the air conditioner;[18] and, $1,050.00 for repairs to the water heater made by Dale the Plumber. The trial court further awarded $400.00 in reimbursement for the attic insulation based on Cook's testimony that she did not tender this amount at the closing as agreed to in the contract.
After reviewing the record, we find the trial court was not manifestly erroneous in finding that Cook breached the contract by failing to make the repairs in accordance with the GNOHS report as agreed. The re-inspection report submitted by GNOHS after the Royals took possession of the property confirms the repairs made by Kim Cook were not properly made in accordance with their initial report. The Royals had to expend additional monies to have the repairs properly completed by professional contractors. We further find that the un-objected to testimony of Mr. Royal is sufficient to support the damages awarded by the trial court as a result of Cook's breach.

CONCLUSION
For the foregoing reasons, we affirm the trial court's finding that rodent infestation is a redhibitory defect allowing the Royals to recover for a reduction in the purchase price of the property. We further affirm the trial court's holding that the reduction in purchase price in this case is equal to the cost of repairing and remediating the property. Accordingly, we affirm the trial court's damage award due to the redhibitory defects. We also affirm the award of attorney's fees, all judicial interest, and court costs.
We also affirm the trial court's finding that Cook breached the contract to make repairs in accordance with the home inspection report and to tender reimbursement as a condition of sale. Further, we affirm the trial court's award of damages in the amount equal to the cost of properly making the agreed upon repairs, and the amount of the reimbursement agreed to by the parties.
AFFIRMED.
NOTES
[*] This opinion approved by Judge Leon A. Cannizzaro, Jr. prior to his retirement.
[1] The Royals filed an answer to Cook's appeal seeking a recalculation of the damage award. The Royal's answer was filed in the trial court after the record was lodged in this court. The record on appeal does not contain the Royals' answer. Cook moved to strike the Royals' answer which this court granted. See La. C.C.P. art. 2088. The Royals neither filed an opposition to Cook's motion to strike, nor have they moved for a rehearing of this court's order; therefore, we decline further consideration of the Royals' request.
[2] Debra Royal did not personally sign the Agreement.
[3] The trial court determined that there were at least three different versions of this document. While all three contained varying handwritten notes, the typed-written portion remained the same. Additionally, on all three documents, item one, "sophet [sic] and facia [sic]" was scratched through accompanied by Cook's initials and a notation that it was not applicable. Following "Drain system . . ." was a handwritten notation that "Verbal explanation was given. No other proof can be provided." One of the three versions contained the signatures of Cook, Joel Royal, and Hallas, and the date next to each. Another version contained no date next to Mr. Royal's signature. The third version contained additional handwritten changes, including a notation that a new water heater was installed with the warranty given to the Royals; that West Side Roofing repaired the roof and breeze-ways; that a new air conditioner was installed; that the air conditioning ducts was inspected by A/C Service; and, that $400.00 was included in documents at the act of sale. This third version was only signed by Cook and Hallas.
[4] GNOHS was dismissed from the suit on summary judgment prior to trial.
[5] Cook contends that, while she previously experienced a problem with rats in the attic in or about 1987-1988, the problem was completely eradicated long before the sale of the property in July 2003.
[6] Because of Louisiana's civilian tradition, this court must begin every legal analysis by examining primary sources of law, consisting of legislation (constitution, codes, and statutes) and custom. See La. C.C. art. 1. Jurisprudence, even when it arises to the level of jurisprudence constante, is a secondary law source. See Alvin B. Rubin, Hazards of a Civilian Venturer in Federal Court: Travel and Travail on the Erie Railroad, 48 La. L.Rev. 1369, 1372 (1988). Judicial decisions are not intended to be an authoritative source of law, and, thus, the civilian tradition does not recognize the doctrine of stare decisis. Doerr v. Mobil Oil Corp., 00-0947, pp. 13-14 (La. 12/19/00), 774 So.2d 119, 128.
[7] The "revision comments" are added to codal articles and statutes by the Louisiana State Law Institute pursuant to the Joint Rules of the Senate and House of Representatives, No. 10, and La. R.S. 24:253; such comments are not intended to be considered as part of the law and are not enacted into law by virtue of their inclusion in a particular Act. See La. C.C. Bk. III, T. VII, Refs. & Annos. Rather, the revision comments merely express the commentator's interpretation of how the codal provisions and/or statutes are to be applied, and are meant to be used as guiding tools for the court.
[8] La. C.C. art. 2521 provides that "[t]he seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things."
[9] At trial, contrary to Mr. Royal's testimony, Cook testified that she was present at the home on both occasions that Mr. Royal viewed the property prior to their executing the Agreement.
[10] Applying La. C.C. art. 2530, because the rodent feces and carcasses were discovered within days of moving into the home, the trial court concluded that this condition was presumed to have existed at the time of delivery.
[11] See Thompson v. Klein, 188 So.2d 180 (La. App. 4 Cir. 1966).
[12] We reject Cook's argument that the stench from the attic (which, because of the burning candles at the time of the inspections, was not detected by Mrs. Royal until after moving into the home) or the thinning attic insulation required the Royals to investigate further by actually lifting the insulation in order to discover the rodent problem. See Creger v. Robertson, 542 So.2d 1090 (La.App. 2 Cir.1989)(purchasers of home were entitled to a reduction in purchase price where the odor emanating from the home's playroom, the source of which was not discoverable until after the purchasers ripped up carpet and discovered urine stains on the back thereof, was nonapparent and constituted a redhibitory defect).
[13] La. C.C. art. 2545 provides:

A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorneys fees. If the use made the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed a credit for such use or fruits.
[14] La. C.C. art. 1953 provides:

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain and unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may result from silence or inaction.
[15] Joel Royal denies this.
[16] Of further significance is the fact that GNOHS reported no observable evidence of a rodent infestation.
[17] Kim Cook, testified that he installed a new water heater according to the Plaquemines Parish Code, and personally performed the electrical repairs according to the National Electric Code; however, GNOHS' report noted that the work was not performed to code.
[18] While the Royals actually paid $6,200.00 to replace the air conditioning unit, Mr. Royal testified that this figure included upgrades that were not mentioned in the GNOHS report. He further testified that the $4,100.00 amount was the lowest bid given to make the required repairs outlined in the inspection report.