763 So.2d 799 (2000)
Bobby G. BERNEY, Plaintiff-Appellee,
v.
ROUNTREE OLDS-CADILLAC CO., INC., Defendant-Appellant.
No. 33,388-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*801 Bobby G. Berney, in proper person.
Weems, Schimpf, Hayter, Gilsoul & Carmouche by Kenneth P. Haines, Brian D. Landry, Shreveport, Counsel for Appellee.
James L. Fortson, Shreveport, Counsel for Amicus Curiae, Starla Berney.
Before DREW, WILLIAMS and KOSTELKA, JJ.
DREW, J.
Bobby G. Berney sued Rountree Olds-Cadillac Co., Inc., d/b/a Car Central for a return of the purchase price of a vehicle along with the cost of the extended service agreement, actual damages, interest, reasonable attorney's fees and court costs. Rountree appealed the trial court judgment rescinding the sale and ordering Rountree to repay to Berney the purchase price, fees, taxes and the cost of the extended warranty. For the following reasons, the judgment is amended, and as amended, affirmed.

FACTUAL BACKGROUND AND TESTIMONY
On April 14, 1998, Berney bought a used 1995 Chevrolet S-10 Blazer with 49,148 miles on it for $14,900 plus tax, title, and registration along with an extended service agreement at an additional cost of $1,495. Berney made a cash payment of $4,000, received a trade-in allowance of $2,250 and financed the rest with Bank One. Berney's petition alleged the problems were air leakage from the tires due to corroded rims, check engine light (CEL) remaining on, corroded exhaust pipe, loose vibrating right radio speaker, and a brake problem. Seeking to have the CEL corrected, Berney alleged that he had the vehicle repaired on the following dates: April 22, 1998; May 11, 1998; May 13 -May 21, 1998; June 17June 22, 1998; June 28, 1998; and July 1 though July 10, 1998. The CEL continued to illuminate, and the petition was filed on October 6, 1998.
Mrs. Berney testified that her husband bought the vehicle on April 14, 1998, for use in his business. They experienced *802 continuous problems with the Blazer beginning shortly after the purchase. When the CEL illuminated on April 17, she called the salesman who told her to wait to bring the car in until Rountree received a handle ordered to replace a broken one. The history of the vehicle showed that the car was taken in for repairs on April 22; the EGR selenoid and the # 2 02 sensor were replaced at that time. Other complaints on that day were leaking tires and a rattle in the dash. Mrs. Berney testified she believed the car was in the shop just that day. On May 11, the vehicle was again taken for service for the CEL, leaking tires and the rattle in the dash. On May 13, the CEL light was still on and the tires still leaked. Rountree supplied a free rental car and kept the Blazer until May 21.
On June 1, they returned the car to Rountree for leaking tires, detached handle and a cracked muffler. Rountree again supplied a free rental car and kept the Blazer from June 1 until June 11. On June 12, the CEL was back on and Mrs. Berney reported the problem immediately. They took the car in on June 17 and Rountree kept the vehicle until June 22. The Rountree invoice states that for the air leakage, the tires were removed and corrosion was cleaned from the rims. For the CEL, the dealer replaced the bank 1 sensor 1, cleaned carbon from the EGR valve and intake and reprogrammed the PCM. To correct the rattle, Rountree tightened all dash mounting screws and reattached both front door trim panels. A muffler was also installed. The Berneys were not charged for the service.
On June 25, the CEL came on and the Berneys contacted a representative of Rountree, which instructed them to bring in the vehicle after the weekend. Rountree kept the car from July 1 until July 10 and supplied a free rental car. Again on July 13, the Berneys took the car in for the CEL problems. Rountree kept the car until July 15 and did not supply a rental car. The manager told Mrs. Berney they had driven the car 200 miles, that they could not get the CEL to come on and that they could not fix it. Mrs. Berney further stated that the manager refused her request that Car Central take the car back.
According to Mrs. Berney, after Rountree admitted they could not fix the vehicle, the Berneys took the Blazer to Courtesy Chevrolet on July 21 for diagnostics at a cost of $191.96 (The receipt in the record is for $91.96). On August 19, 1998, the Berneys took the Blazer to Red River Motor Company for the repairs recommended by Courtesy. At a charge of $220.53, Red River replaced the spark plugs, replaced the PCV valve, removed and inspected o-rings, replaced the in-line fuel filter and, to correct the CEL, replaced an oxygen sensor. On November 19, the vehicle was taken to Red River for general maintenance at a cost of $124.18. On February 23, 1999, they again took the vehicle to Red River for concerns about the CEL, a state inspection and a door lock. Red River cleared the codes for the 02 sensor and checked the tire pressure. On March 2, the Berneys again took the car to Red River with complaints about the CEL. Red River replaced the Bank 1 02 sensor at no cost. On April 13, 1999, the Berneys had diagnostics run by Red River at a cost of $62.55 for continuing problems with the CEL. The problem was determined to be too much fuel which caused the oxygen sensor to read rich. Red River estimated the cost of eliminating the problem was $695.00. At trial, Mrs. Berney stated the CEL continued to illuminate intermittently. Mrs. Berney acknowledged that Rountree had not charged for the work done nor for any of the rental cars supplied.
Mr. Berney identified the invoice which contained the purchase price of the Blazer along with the $1,495 cost of the extended warranty he also purchased. Berney testified there was absolutely no discussion about his waiving the warranty on the vehicle, although he knew he was purchasing *803 an extended warranty. After taking delivery of the Blazer after 5:00 p.m. Tuesday, Berney first noticed the check engine light on Thursday. Berney had continuing tire leakage problems from the first week he had the vehicle. Berney stated that on all but one occasion Rountree supplied a replacement vehicle when the Blazer was in its shop and that Rountree did not charge him for the work done. Berney testified that he would not have purchased the vehicle had he been aware of the various defects present. A 1998 Blazer Owner's Manuel was placed into evidence during Berney's testimony. Concerning the Service Engine Soon light, the manual stated:
A computer monitors operation of your fuel, ignition and emission control systems. This light should come on when the ignition is on, but the engine is not running, as a check to show you it is working. If it does not come on at all, have it fixed right away. If it stays on, or comes on while your are driving, the computer is indicating that you have a problem. You should take your vehicle in for service soon.
NOTICE:
If you keep driving your vehicle with this light on, after awhile
the emission controls won't work as well, your fuel economy
won't be as good and your engine may not run as smoothly.
This could lead to costly repairs not covered by your warranty.
Bubba Davis, an employee of Gateway Tire and Service, stated that all four tires were going down in pressure on February 10, 1999. One tire had a nail in it while another had trash inside the tire. Davis identified the $21.65 receipt which was the cost for breaking down the tires, installing a bead sealant and putting the tires back on the vehicle.
A technician for Red River, David C. Harris determined the CEL problem was caused by the fuel injector itself which could be fixed at an estimated cost of $695.00. Davis explained that diagnostics results depended on which diagnostic tree was used to check the vehicle. The fact that the Rountree technicians never found that problem meant that they missed it or that it was not present.
Testifying for the defense, Steven S. Sweet, shop foreman for Rountree during the period the Berneys were seeking repairs, stated that on the first visit on April 22, Rountree replaced an 02 sensor in the exhaust pipe. On the May 5 service trip, a different sensor was replaced. Sweet said he drove the car himself at night, to and from work, on one occasion 191 miles and he never could get the CEL to illuminate. He also rode in the Blazer with Mrs. Berney driving with the same result. Sweet denied telling Mrs. Berney that Rountree could not fix the problem. According to Sweet, Rountree's diagnostics showed three different codes for the CEL problem, two of which Rountree repaired. The third code appeared after the other two were repaired. Opining that the Berney's Blazer never became completely useless, Sweet also stated Rountree found no indication of the problem diagnosed by Red River.

REASONS FOR JUDGMENT
Following the May 21, 1999 trial, the trial court concluded that Berney made amicable demand. At trial, Berney testified that he discovered problems the day after the purchase, spoke to the salesman and asked for a refund.
The trial court rejected Rountree's contention that Berney waived the warranty *804 when he signed the April 14, 1998 agreement. The trial court relied upon Berney's testimony that no one told him he did not have a warranty but they did tell him purchasing an extended warranty would be helpful. The trial court found that Rountree treated the car as if it were under warranty. A waiver must be written and contained in the bill of sale. The trial court concluded that Rountree's waiver did not meet those requirements. Ordering the sale rescinded, the trial court granted Berney a judgment returning the purchase price of the auto and the extended warranty along with fees, taxes and repairs, plus interest and costs. Rountree suspensively appealed.

DISCUSSION

Redhibition
A seller warrants the buyer against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed the buyer would not have bought the thing if he had known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. La. C.C. art. 2520. The implied warranty against redhibitory defects covers only hidden defects, not defects that were known to the buyer at the time of the sale, or defects that should have been discovered by a reasonably prudent buyer. La. C.C. art. 2521. Proof that a redhibitory defect existed at the time of sale can be made by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of sale. Boos v. Benson Jeep-Eagle Co., Inc., 98-1424 (La. App. 4th Cir.6/24/98), 717 So.2d 661, writ denied, 98-2008 (La.10/30/98), 728 So.2d 387.
In Pardue v. Ryan Chevrolet, Inc., 31,052 (La.App.2d Cir.9/28/98), 719 So.2d 623, writ denied, 98-2714 (La.App.2d Cir.12/18/98), 734 So.2d 639, this court explained that a defect is also redhibitory when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price. La. C.C. art. 2520. In all sales transactions, the seller impliedly warrants that the thing sold is free of redhibitory defects and reasonably fit for its intended purpose. Although this warranty does not apply as extensively as with new products, it requires that even used equipment operate reasonably well for a reasonable period of time.
Minor defects alone do not constitute redhibitory defects, but even when vices are minor and repaired, multiple defects may support redhibition. The existence of redhibitory defects is a question of fact which should not be disturbed in the absence of manifest error. Ford Motor Credit v. Laing, 30,160 (La.App.2d Cir.1/21/98), 705 So.2d 1283. Both Berneys stated that the problems with the used Blazer began almost immediately and within three days after the purchase. Rountree very commendably made multiple assorted repairs at no cost to the Berneys and supplied a rental car at no charge on all service visits except one. However, the principal problem, the illuminated CEL, was never resolved. We cannot say that the trial court was manifestly erroneous or clearly wrong in concluding that the plaintiff proved redhibitory defects existed in the vehicle.

Waiver of Warranty
La. C.C. art. 2548 states, in pertinent part, that the parties may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer. In order to be effective, a waiver of warranty must: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and, (3) either be brought to the attention *805 of the buyer or explained to him. The seller has the burden of proving that the buyer waived the warranties. Such waivers are strictly construed against the seller. Boos v. Benson, supra.
Rountree vigorously argued that Berney waived any implied warranty, even though he had purchased an extended service agreement. Rountree relied upon the printed warranty waiver on the form signed by Berney at the time of purchase. Berney's testimony was that no one informed him that he was waiving the warranty on the vehicle. On the front of the form is a section labeled "Disclaimer of Warranties," which states that the purchaser read the terms and conditions. In bold type, No. 9 in the list of "Additional Terms and Conditions" on the rear of the form states that there are no warranties and that the buyer specifically waives the implied warranty provided by Louisiana law. Berney is college educated and runs his own business. Therefore, Rountree contended Berney should be bound by his signature on the document. However, a typed addition on the front of the form is "WARRANTY 1495.00" in the list of various charges.
Rountree introduced at trial a Buyer's Guide for the Blazer, a very ambigous form which sets out warranties for the vehicle (attached to this opinion as Appendix I). Among the boxes on the form are Implied Warranty Only (unmarked box), Warranty (X marked in the box), and Service Contract (unmarked box). Other boxes and blanks are also empty. The only other writing on the form is Berney's signature. If the form were interpreted as eliminating the warranty, then it would be reasonable to conclude that the Implied Warranty and Service Contract warranties were applicable, since those blanks are unmarked. On the other hand, the form could be read as including a warranty since that blank is marked while excluding implied warranties and a service contract.
Notwithstanding the waiver of warranty on the form Berney signed, there is no clear and unambiguous waiver on warranty under the facts presented by this record. The form itself containing the added word "WARRANTY" is contradictory and the accompanying "BUYER'S GUIDE" is ambiguous. Further, the trial court evidently accepted Berney's testimony that there was no discussion about the lack of warranty while he was encouraged to purchase an extended warranty.
Rountree had the burden of proving that Berney waived the warranties. After reviewing this entire record, we conclude that Rountree did not establish that a valid waiver of warranty occurred under the particular facts and evidence in this record.

Recission of Sale or Reduction of Price
In a redhibitory suit, the trial court has the discretion to order a reduction of the price instead of a rescission of the sale where the defect in the thing sold is such as to merely diminish the value. The reduction in price which the trial court may decree is the difference between the sale price and the price a reasonable buyer and seller would have agreed upon if they had known of the defects. Pardue v. Ryan, supra.
There must be evidence in the record to support a reduction of the purchase price. The burden of establishing the amount of any reduction in the purchase price to which a buyer is entitled because of a redhibitory vice is upon the buyer. A party may prove the amount of damages or expenses to which he or she is entitled by testimony that he or she has paid the amounts, corroborated by the introduction into evidence of the bills paid and the identification of them as expenses incurred because of the opponent's default, without necessarily being required to introduce the testimony of those who performed the work or repairs. Pardue v. Ryan, supra.
One of the principal factors in awarding a reduction in the purchase price *806 is the cost of repairing the defects, which under certain circumstances may be the only consideration. However, where warranted, the court may determine what it believes to be the difference between the actual sales price and the price that a reasonable buyer and seller would have agreed upon had the specific defect been known to them at the time of the sale. Pardue v. Ryan, supra.
The ultimate question of the existence of a redhibitory vice and the amount to be awarded as a reduction of the purchase price are questions of fact for the trial court, which should not be disturbed in the absence of manifest error or abuse of its wide discretion. In Pardue v. Ryan, supra, the plaintiff proved the existence of a redhibitory vice which made use of the vehicle so inconvenient that she would not have purchased the vehicle had she known of its existence. Because Pardue continued to drive the vehicle on a regular basis, a recission of the sale was not warranted; however, a reduction in the purchase price was warranted.
In this matter, the documentation filed by the parties establishes that from the time of the April 1998 purchase until the month before this dispute was tried in May 1999, the Berneys and, to some extent Rountree, drove the vehicle over 17,000 miles. Although plagued by the CEL and other problems, the Berneys were able to use the vehicle extensively. While Berney would not have purchased the Blazer had he known of the CEL defect and other problems, the vehicle was not useless. Cf. Savannah v. Anthony's Auto Sales, Inc., 618 So.2d 676 (La.App. 2d Cir.1993) in which the vehicle was inoperable three months after the purchase. In this matter, the trial court erred in ordering the sale to be rescinded and the purchase price returned. The judgment is amended to limit the relief to a reduction of the purchase price.
The Berney's offered testimony that the cost of eliminating the CEL problem was $695.00. Rountree made extensive repairs to the vehicle at no cost to the Berneys. However, the Berneys established that they incurred the following additional expenses above regular maintenance:

$ 60.00 Diagnostics at Courtesy Chevrolet for CEL 7/21/98
$ 90.09 Replace 02 sensor at Red River 8/19/98
$ 26.65 Sealed beads on four tires at Gateway 2/10/99
$ 60.76 Replace bank 1 02 sensor at Red River 3/2/99
$ 62.55 Diagnostic at Red River for CEL 4/13/99
_______
$300.05

The prior repairs and the estimate to address the CEL problem total $995.05. While Rountree lessened the Berneys' inconvenience by supplying them with free rental cars on all but one service visit, the Berneys were continuously troubled by the CEL which they learned from the owner's manual could indicate serious and expensive problems with the vehicle. Under these circumstances, we find that a total reduction in the purchase price of $2,000.00, which includes the cost of the past and future repairs, reflects the difference between the actual sales price and the price that a reasonable buyer and seller would have agreed upon had the specific defect been known to them at the time of the sale.

DECREE
The judgment of the trial court is amended to delete awards for the return of the purchase price, the transfer fee, the sales tax, the documentation fee and the extended warranty. Having proved the presence of redhibitory defects which rendered the vehicle inconvenient but not useless, the plaintiff is entitled to a reduction in the purchase price of the vehicle in the amount of $2,000.00, including $995.05 for the costs of past and future repairs. As amended the judgment is affirmed at defendant's costs.
AMENDED, AND AS AMENDED, AFFIRMED.
*807 
*808