LOLLEY, J.
| j Ramsey Auto Brokers, Inc. (“Ramsey Auto”) appeals a judgment from the Monroe City Court, Parish of Ouachita, State of Louisiana, granting Clara Wilks (‘Wilks”) rescission of the sale of a used vehicle and damages in the amount of $7,000.00, plus $2,500.00 in attorney fees. For the following reasons, we amend the judgment to decrease the amount of damages to that of the purchase price, and affirm the judgment as amended.
Facts
On September 14, 2011, Wilks purchased a 2003 Pontiac Grand Am GT with 146,045 miles on the odometer for $4,958.00 from Ramsey Auto. Instead of paying the full amount for the vehicle, Wilks traded in a Lincoln LS for $3,250.00, and paid the remaining balance of $1,745.00 by check. She also paid various fees in the amount of $45.00 for a total price of $5,003.00.
Wilks testified that she went to Ramsey Auto to purchase a vehicle for her niece to commute to and from college. Wilks’ niece had been using the Lincoln, but due to the price of gasoline, Wilks was interested in buying a car that was more economical. Chris Martin (“Martin”), a salesman at Ramsey Auto, approached Wilks and showed her a Honda and the Pontiac described above. At some point during the sale, Martin falsely informed Wilks that the car had been inspected by the dealership’s mechanic who stated that the car was in good condition. Wilks then test drove the Pontiac for two blocks and noted no mechanical issues.
*1012 Prior to the completion of the sale, representatives from Ramsey Auto presented Wilks with two forms: a bill of sale and a buyer’s guide. The bill of sale outlined the terms of the sale and contained an “as is” disclosure. 12That statement is found in the middle of the page, with a signature line underneath, and provides:
THIS VEHICLE IS BOUGHT AS IS. EVEN AS TO HIDDEN, UNKNOWN, AND UNDISCOVERED DEFECTS. I HAVE READ THIS AND UNDERSTAND IT.
SIGNED: Clara F. Wilks
Additionally, the following statement appears on the front page of the buyer’s guide:
X AS IS-NO WARRANTY YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle.
X WARRANTY NOT AVAILABLE
David Green, the dealership’s manager, presented this paperwork to Wilks and informed her that she was buying the car “as is,” but offered no further explanation. However, Wilks testified that despite being informed that the sale was “as is,” she was also told that if something went wrong with the motor, she could bring the car back to the dealership for repair. There was no further discussion relating to warranties or the quality of the vehicle, and Wilks signed both the bill of sale and the buyer’s guide, purchased the car, and drove it-home.
Wilks testified that the car began to have mechanical problems as soon as it left the lot. Specifically, she stated that the coolant light came on shortly after leaving the dealership and the car was running hot. Wilks immediately notified Martin that her car was losing coolant, and he instructed her to simply add coolant. She did as instructed, but to no avail; the coolant light came back on before arriving home. Wilks continued this ^process for some time, and even reached a point where she was having to add coolant to the vehicle every other day.
Eventually, Ramsey Auto asked Wilks to bring the car in for an inspection by Professional Auto Service, the dealership’s contractual mechanical shop. Professional Auto Service’s initial inspection of the vehicle revealed that there was no leak. However, Wilks continued to have car trouble, and over a one-year period, Wilks brought the car back to Professional Auto Service approximately four times, as well as to other mechanics of her own choosing. During this back and forth, Wilks placed approximately 15,000 miles on the car. However, despite multiple attempted repairs, the vehicle’s coolant problem remained unresolved, and ultimately, Ramsey Auto informed Wilks they would provide no further assistance. Wilks responded by demanding that the dealership take back the car and refund her money. However, Ramsey Auto refused and this litigation ensued.
Wilks filed suit against Ramsey Auto in Monroe City Court seeking relief under redhibition, rescission of the sale, refund of the purchase price and associated costs, damages for mental anguish resulting from unfair trade practice, and attorney fees.[1] After hearing testimony and considering *1013 the evidence, the trial court found the car to have redhibitory defects and that Wilks was entitled to rescission of the sale. The trial court also held the purported waiver of warranty to be ineffective. As a result, Wilks was Rawarded damages in the amount of $7,000.00 plus $2,500.00 in attorney fees. In deciding damages, the trial court determined that Wilks was entitled to rescission of the sale and return of the purchase price which the court established as $7,000.00 representing the value of the Lincoln used as trade-in.[2]
Ramsey Auto appealed, and also filed an exception of no cause of action which will be considered together with the merits of this appeal. Wilks answered the appeal seeking an increase in attorney fees.
Discussion
We first note that Ramsey Auto’s appellate brief is not in compliance with Uniform Rules-Courts of Appeal, Rule 2-12.4 due to Ramsey Auto’s failure to specify or assign any alleged error by the trial court. Nonetheless, from the argument made from Ramsey Auto’s appeal brief, we will address what we consider to be the issues of its appeal.

Redhibition

Ramsey Auto maintains that the trial court erred in finding redhibitory defects in the automobile purchased by Wilks. According to Ramsey Auto, any defect that existed in the engine was caused by normal wear and tear, running the vehicle hot for an extended period of time, or the introduction of stop leak — not vices or defects which would warrant the rescission of the sale. |BWe disagree.
A seller warrants the buyer against red-hibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed the buyer would not have bought the thing if he had known of the defect. The existence of such defect gives a buyer the right to obtain rescission of the sale. La. C.C. art. 2520.
The implied warranty against redhibitory defects covers only hidden defects, not defects that were known to the buyer at the time of the sale, or defects that should have been discovered by a reasonably prudent buyer. La. C.C. art. 2521. To prevail in such a proceeding, the plaintiff must also prove that the defect existed at the time of the sale, and that he afforded the seller an opportunity to repair the thing. Gaston v. Bobby Johnson Equip. Co., Inc., 34,028 (La.App.2d Cir.11/03/00), 771 So.2d 848. Proof that a redhibitory defect existed at the time of the sale can be made by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. Berney v. Rountree Olds-Cadillac Co., 33,388 (La.App.2d Cir.06/21/00), 763 So.2d 799; Royal v. Cook, 2007-1465 (La.App. 4th Cir.04/23/08), 984 So.2d 156, writ denied, 2008-1133 (La.09/19/08), 992 So.2d 941. The buyer of an automobile who asserts a redhibition claim need not show the partic *1014 ular cause of the defects making the vehicle unfit for the intended purposes, but rather must simply prove the actual existence of such defects. Young v. Ford Motor Co., 595 So.2d 1123 (La.1992).
Although the warranty against redhibi-tory defects regarding used products does not apply as extensively as with new products, it requires that |fieven used equipment operate reasonably well for a reasonable period of time. Bemey, supra. Inherent in the sale of an older car is the knowledge that the machinery and parts are worn and subject to breakdown and that the vehicle will require mechanical work from time to time to keep it in good running condition. Burch v. Durham Pontiac Cadillac, Inc., 564 So.2d 380 (La.App. 1st Cir.1990), writ denied, 569 So.2d 968 (La.1990).
The existence of a redhibitory defect is a question of fact which should not be disturbed in the absence of manifest error. Bemey, supra. An appellate court may not set aside a trial court’s finding of fact absent manifest error or unless the factfinder is clearly wrong. Stobart v. State, Through Dept. of Transp. and Dev., 1992-1328 (La.04/12/93), 617 So.2d 880.
In the instant case, the trial court fully considered the evidence concerning the alleged defects in the vehicle and made a specific finding of fact, ultimately accepting Wilks’ contentions. The testimony presented at trial established that the car began to have coolant problems as soon as it left the lot. Although Ramsey Auto made multiple assorted repairs at no cost to Wilks, the principal problems, overheating and a leaking gasket, were never resolved. These problems resulted in Wilks being unable to rely on the automobile for fear that it would cease operating properly. Accordingly, based upon the record before this Court, we find that the trial court was not manifestly erroneous or clearly wrong in its conclusion that there were redhibitory defects in the vehicle.

Waiver of Warranty

It is well established that parties are free to limit or diminish, by |7express agreement, the warranty imposed by law. La. C.C. art. 2458. To be effective, a waiver of warranty must: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and (3) either be brought to the attention of the buyer or explained to him. Prince v. Paretti Pontiac Co., 281 So.2d 112 (La.1973); Royal, supra. The seller has the burden of proving that the buyer waived the warranties, and such waivers are strictly construed against the seller. Boos v. Benson Jeep-Eagle, Inc., 1998-1424 (La.App. 4th Cir.06/24/98), 717 So.2d 661, writ denied, 1998-2008 (La.10/30/98), 728 So.2d 387; Berney, supra.
In support of its contention that Wilks waived the warranty against redhi-bitory defects, Ramsey Auto relies on the printed language found in both the bill of sale as well as the buyer’s guide. Ramsey Auto maintains that both of these documents were presented to Wilks prior to purchasing the car, Wilks was informed that the purchase was “as is” and with no warranty, and Wilks acknowledged the waivers by signing both documents. Here, although the language in the bill of sale and the buyer’s guide states that the purchase was being made “as is” and with no warranty, it does not contain language sufficient to make it clear and unambiguous. The language specifically fails to state that the purchaser waives both express and implied warranties, including the warranty of fitness for a particular purpose and the warranty against redhibitory vices. As a result, given the statutory requirement of unambiguous notice to the consumer and considering this record, we conclude that *1015 the trial court was not manifestly erroneous or clearly wrong in finding the waiver to be ineffective.
Nevertheless, a sale made “as is” is not a waiver of all warranties. Ross v. Premier Imports, 1996-2577 (La.App. 1st Cir.11/07/97), 704 So.2d 17, writ denied, 1997-3035 (La.02/13/98), 709 So.2d 750; Berney, supra. The vendor is not relieved of the implied warranty under La. C.C. art. 2520 that the thing must be fit for its intended use. Id. The intended use of an automobile is transportation. Stuck v. Long, 40,034 (La.App.2d Cir.08/17/05), 909 So.2d 686, writ denied, 2005-2367 (La.03/17/06), 925 So.2d 546.
Here, the automobile purchased by Wilks was undoubtedly a lemon. The evidence and testimony on the record reflects that Wilks was constantly having to take the car to Professional Auto Service for varying mechanical issues. In fact, Wilks stated that the car became so unreliable that her niece had to stop using it for its intended use — transportation to and from college. In opposition, Ramsey Auto makes much of the fact that Wilks placed approximately 15,000 miles on the car in six months. However, the facts and testimony at trial established that any value derived from the use of the car purchased by Wilks was greatly outweighed by the inconvenience caused by the damaged vehicle.
Even more, it is uneontested that Martin personally assured Wilks that the dealership’s mechanic had inspected the vehicle and declared it to be in good condition. La. C.C. art. 2548 provides, in pertinent part that “[a] buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have.” Even if the language waiver requirements were met, the personal assurance of the seller that the car was in good condition qualified the written waiver, rendering its language ambiguous. See Ford New Holland Credit Co. v. McManus, 36,567 (La.App.2d Cir.12/11/02), 833 So.2d 1130.

Damages

We next turn to the issue of damages. According to Ramsey Auto, the award of damages in excess of the sales contract was in error. Instead of damages in the amount of $7,000.00 awarded by the trial court, Ramsey Auto avers that if any damages are warranted, the correct amount would be is $5,003.00, or the purchase price of the vehicle. We agree.
Liability, or damages owed of a seller in redhibition cases is addressed in La. C.C. arts. 2531 and 2545. Louisiana C.C. art. 2531 provides that:
[a] seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable ... he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale ... less the credit to which the seller is entitled if the use made of the thing ... were of some value to the buyer ... (Emphasis added).
On the other hand, La. C.C. art. 2545 provides that:
[a] seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale ... and also for damages and attorney fees. If the use made of the thing ... were of some *1016 value to the buyer, such a seller may be allowed credit for such use ... (Emphasis added).
In both scenarios, when the trial court finds that the buyer is entitled to rescission of the sale, the baseline award of damages is a return of the price with interest from the time it was paid, and a reimbursement of the reasonable expenses occasioned by the sale. Guided by the language set forth in La. C.C. arts. 2531 and 2545, we conclude that the trial court erred |inin awarding damages in excess of the sales contract. Therefore, we amend the award of damages from $7,000.00 to $5,003.00, which includes the purchase price of the Pontiac plus reasonable expenses occasioned by the sale.

Attorney Fees

A trial court has great discretion in awarding attorney fees in redhibition cases. Jones v. Winnebago Indus., Inc., 47,137 (La.App.2d Cir.05/16/12), 92 So.3d 1113. Attorney fees in redhibition cases are specifically allowed under La. C.C. art. 2545. Before an attorney fee award will be disturbed on appeal, the record must reveal that the trial court abused its discretion in making the award. Smith v. Acadiana Mortg. of La., Inc., 42,795 (La.App.2d Cir.01/30/08), 975 So.2d 143.
Here, we find that the trial court did not abuse its discretion in awarding Wilks attorney fees. While we recognize that the trial court did not expressly state reasons for awarding attorney fees, the record clearly provides evidence sufficient to support the trial court’s decision. As noted above, there is testimony on the record that Martin misled Wilks and declared that the dealership’s mechanic had inspected the car and declared that it was good condition. This evidence was uncon-tradicted, and was ultimately accepted by the trial court in its factfinding capacity. Accordingly, Ramsey Auto’s contention that the trial court erred in awarding attorney fees is without merit.
Furthermore, Wilks answered this appeal, seeking an increase in attorney fees for costs and work performed in connection with this appeal. It is within the appellate courts discretion to award or increase attorney fees for depending an appeal. Nesbitt v. Nesbitt, 46,514 (La.App.2d Cir.09/21/11), 79 So.3d 347, writ denied, 2011-2301 (La.12/02/11), 76 So.3d 1178. The skill exercised by the attorney and the time and work done on the appeal are factors considered in determining the amount of the award for attorney fees. Id.
Considering our affirmation of the trial court in respect to liability, we find that an additional award of $1,500.00 is appropriate to compensate Wilks’ counsel for costs associated with this appeal.

Exception of No Cause of Action

As a final matter, we will address Ramsey Auto’s peremptory exception of no cause of action which was filed for the first time in this Court pursuant to La. C.C.P. art. 2163, which provides the appellate court with the discretion to consider a peremptory exception filed for the first time in that court, “if pleaded prior to the submission of the case, and if proof of the ground of the exception appears in the record.” In bringing this exception of no cause of action, Ramsey Auto alleges that La. R.S. 32:783(F)(3) acts as an absolute bar to redhibition claims arising from the sale of a used motor vehicle with a bill of sale containing warranty exclusions and sold “as is.” Louisiana. R.S. 32:783(F)(3) provides, in pertinent part:
F. The commission’s powers and duties shall include but are not limited to the following:
*1017 3. Requiring all dealer sales to have a condition of sale, such as warranty disclaimer, implied or written warranty, or a service contract. If a sale of a used motor vehicle is “as-is” and with a waiver 11gof all warranties, the bill of sale shall include a notice which clearly and unambiguously states that the terms of the sale are “as-is” and with a waiver of all warranties, including any claim for redhibition or reduction of or return of the purchase price. The customer shall acknowledge the terms of the sale. An acknowledgment of the terms of the sale via acceptance of an electronic notice at any time prior to or as part of the transaction shall constitute compliance with this Section. If a used motor vehicle dealer complies with the provisions of the Section, the purchaser shall not be entitled to a return of the purchase price, a reduction of the purchase price, or a repair of the vehicle without payment of the cost of repair.
The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. Bogues v. La. Energy Consultants, Inc., L.L.C., 46,434 (La.App.2d Cir.08/10/11), 71 So.3d 1128. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. Jackson v. State ex rel. Dept. of Corrections, 2000-2882 (La.05/15/01), 785 So.2d 803. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Bogues, supra.
According to the statute outlined above, to be effective, the bill of sale must include a notice which clearly and unambiguously states that the terms of the sale are “as is” and waives all warranties, including any claim for redhibition or reduction of or return of the purchase price. Here, the purported waiver relied on by Ramsey Auto only recites that the sale is “as | iais” and without warranty. However, it does not make any reference to claims for red-hibition or return of the purchase price as required by La. R.S. 32:783(F). Therefore, because the waivers contained in the bill of sale and the buyer’s guide do not meet the requisite language found in the statute, we find this provision to be ineffective and not applicable to the present case. As a result, we conclude find that the facts alleged in the petition clearly state a cause of action under redhibition. Ramsey Auto’s exception of no cause of action is denied.
Conclusion
For the reasons stated above, we find that the trial court was not manifestly erroneous or clearly wrong in concluding that defects existed in the vehicle which rendered the car useless, or its use so inconvenient that it must be presumed that Clara Wilks would not have bought the ear had she known of the defect. Additionally, we conclude that the trial court was not manifestly erroneous or clearly wrong in finding the purported waiver of warranty to be ineffective. However, we do conclude that the trial court erred in awarding damages in excess of the purchase price of the vehicle. Therefore, the judgment of the trial court is amended to reduce the award of damages from $7,000.00 to $5,003.00. As amended, the judgment is affirmed. We also award an additional $1,500.00 in attorney fees to Clara Wilks *1018 for the costs of this appeal. Furthermore, Ramsey Auto Brokers Inc.’s exception of no cause of action is hereby denied. All costs of this appeal are assessed to Ramsey Auto Brokers, Inc.
AMENDED, AND AS AMENDED, AFFIRMED; EXCEPTION DENIED.

. Initially, Wilks filed her petition for damages pro se, seeking damages totaling $5,003.00 "or car heads/motor repaired at defendant's expense." Wilks then retained counsel who filed a supplemental and amending petition for damages, which reaffirmed the allegations and demands of the original petition and further sought rescission of the sale, damages for mental anguish and associated costs, attorney fees, and an unfair trade practices claim.

. During trial, Wilks, seeking to support her unfair trade practices claim, attempted to offer evidence that Ramsey Auto grossly undervalued the Lincoln LS used as trade-in. Ramsey Auto properly objected, and complained that this evidence was an attempt to expand the pleadings, which did not assert that the Lincoln had been undervalued. Wilks argued as an alternative ground for admittance that the evidence is relevant to rescission of the sale because if rescission of the sale were to be granted, she would be entitled to receive the Lincoln back. However, since the dealership had already disposed of the Lincoln, she should instead be awarded the fair market value. The trial court agreed, and admitted the NADA blue book value of the Lincoln into evidence as relevant to the rescission of the sale.