Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,349-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

TOMMY TAYLOR                                    Plaintiff-Appellee

versus

RANDALL TAYLOR, individually          Defendants-Appellants
and RANDALL TAYLOR d/b/a
TNT AUTO REPAIR AND
TOWING

* * * * *

Appealed from the
West Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 58,049

Honorable Alan James "Jim" Norris, Judge

* * * * *

OFFICE OF ANTHONY J. BRUSCATO          Counsel for Appellants
By: Anthony J. Bruscato

WILLIE HUNTER, JR.                              Counsel for Appellee


* * * * *

Before PITMAN, STEPHENS, and THOMPSON, JJ.

**STEPHENS, J.,**

This civil matter arises from the West Monroe City Court, Parish of Ouachita, the Honorable Alan James Norris, Judge, presiding. The plaintiff, Tommy Taylor ("Tommy") filed a petition against the defendant, Randall Taylor ("Randall"), seeking rescission of an oral agreement between the parties for the purchase of a 2007 Ford Mustang GT 500. The trial court determined that Tommy was entitled to rescission of the contract and ordered Randall to return the purchase price to and reimburse Tommy for the diagnostic testing done on the Mustang. Randall has appealed from the adverse judgment. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

On February 23, 2023, Randall acquired a 2007 Ford Mustang GT 500 from Interstate Dodge Chrysler Jeep Ram ("Interstate Dodge") in West Monroe for $2,189. Between February 23 and 27, 2023, Randall and Tommy entered into an oral agreement whereby Tommy agreed to purchase the Mustang for $5,500. He made his first cash payment of $900 on February 27, 2023. He made three more cash payments after his initial payment: $1,000 on March 22, 2023; $500 on an unknown date; and $500 on April 7, 2023. Following some miscommunication between Randall and Tommy as well as alleged misinformation about the state of the vehicle, Tommy filed suit on March 3, 2024, alleging that Randall failed to perform mechanical work on the vehicle as promised, thus rendering the vehicle inoperable for its intended use. A trial on the matter commenced on September 24, 2024, in West Monroe City Court.

Several individuals testified at trial, including Eddie Williams and Samuel Holland, Tommy's employees; Donnie McCarty, a mechanic at

High Tech Automotive; and Elizabeth Taylor, Randall's daughter. Tommy also testified at trial and stated that he was looking for a vehicle for his grandson when Randall approached him about the Mustang. When Randall made this suggestion, Tommy asked how much Randall wanted for the vehicle, and Randall responded that he would sell the Mustang for $5,500. Tommy asked Randall to explain what was wrong with the vehicle, and Randall stated that the vehicle needed a timing chain. Tommy testified that Randall agreed to fix the timing chain. Randall also told Tommy he would change the trunk and detail the vehicle for Tommy. According to Tommy, because Randall feared causing more damage to the motor, Randall never started the vehicle. Tommy testified that he agreed to purchase the vehicle for $5,500, and he paid for the vehicle in cash payments over a period of time. The alleged agreement and the purchase of the vehicle occurred at Randall's place of business, TNT Auto Repair and Towing.

Tommy testified that after he paid for the vehicle in full, he would check in on the car and the repair progress. Tommy stated that he was under the impression that Randall would let his mechanics do the repairs to the timing chain, but the mechanic who was to perform the repairs passed away. Following the death of the mechanic, Tommy eventually convinced Randall to move the vehicle to High Tech Automotive around March 2023, where he paid a $200 deposit for Donny McCarty, a mechanic, to inspect the vehicle. Tommy informed the court that he wanted the vehicle moved to High Performance because Randall had yet to perform any repairs on the Mustang.

Following McCarty's inspection of the Mustang, McCarty informed Tommy that it was the engine, not necessarily the timing chain, that had

2

issues. Specifically, McCarty testified that the vehicle had a "lower end knock." McCarty stated that High Tech Automotive would not venture into the bottom end of an engine to make repairs as deep engine repair work was not usual practice for High Tech. He also indicated that the engine would likely need to be replaced. McCarty clarified in his testimony that a timing chain issue would involve pulling the front of the engine out, and he estimated the cost of repairing a timing chain to be around $2,600. However, the engine issue McCarty found would require pulling the entire engine out, disassembly of the engine, and likely full replacement of the engine.

Tommy relayed this information to Randall, who allegedly indicated that he would look for a replacement motor for the vehicle. However, Tommy testified that in follow-up conversations, Randall had decided he was no longer going to pay for the repairs to the Mustang. When questioned about acquiring title to the vehicle, Tommy said that he received the title to the vehicle after he paid for the Mustang. Tommy testified that he would not have purchased the Mustang had he known that the vehicle's motor needed to be replaced. On cross-examination, Tommy indicated that, because he is a mechanic by trade, he did not need anyone to evaluate the vehicle before he purchased it.

Randall testified that he owns TNT Auto in West Monroe, where he has purchased and sold vehicles for 35 years. Randall stated that he initially purchased the Mustang for about $2,200 from Interstate Dodge and had the vehicle towed to his shop. When he purchases these types of vehicles and brings them to TNT Auto, Randall sells the vehicles "as is." When Randall initially purchased the vehicle, Randall testified that Interstate Dodge

informed him that there was either a timing chain or motor issue. For this reason, Randall stated that he never turned the vehicle on. Randall informed the court that, while he and Tommy were discussing the Mustang, Randall told him that the vehicle had a bad timing chain or a bad engine. He conceded that Tommy purchased the vehicle for $5,500, but Randall stated if Tommy wanted Randall's mechanics to work on the vehicle, Tommy would have to pay for those repairs. Randall reiterated in his testimony that he clearly told Tommy that the vehicle had a bad timing chain or a bad motor and that the purchase of the car was "as is."

In Randall's testimony, he emphasized that Tommy knew the car not only had a bad timing chain but also had a bad motor. The following exchange occurred between Randall and the judge relating to the purchase of the vehicle:

> **Judge**: So, you're telling me that Mr. Tommy Taylor is just not being truthful when he says that you agreed to take care of [the] timing chain?
>
> **R. Taylor**: That's correct.
>
> **Judge**: And that's where he said you agreed to detail it, you're telling me he wasn't telling the truth?
>
> **R. Taylor**: That's correct.

Randall also testified that he never agreed to buy Tommy a new motor once Tommy realized the vehicle had motor issues. Randall stated that while he had his daughter give Tommy title to the vehicle after he furnished full payment for the vehicle, Tommy failed to get the title notarized and return a copy of the notarized title to Randall.

At the close of testimony, the trial court found that the parties had an agreement for Tommy to purchase the Mustang for $5,500. The court

4

determined that Tommy's testimony was credible and found that Randall agreed to fix or repair the vehicle. Furthermore, the trial court concluded that Randall's testimony was not credible, and that Randall knew of the issue with the motor and did not disclose this information to Tommy before the sale. In the judgment filed on October 10, 2024, the trial court ordered Randall to return the purchase price of the vehicle, $5,500, to Tommy as well as reimburse Tommy $250 for the diagnostic testing performed by High Tech Automotive. The court also ordered Randall to reimburse Tommy all court costs and ordered Randall to cover Tommy's attorney fees ($2,500).

### DISCUSSION

Randall contends that the trial court erred in granting a rescission of the sale between the parties. More specifically, Randall maintains that the trial court was manifestly erroneous in entering a judgment for Tommy because his testimony was internally contradictory and implausible. Randall and Tommy's testimony was contradictory concerning the terms of the sale agreement, but the trial court chose to believe Tommy's testimony. In response, Tommy maintains that the trial court did not commit manifest error in granting Tommy a rescission of the sale of the Mustang. Tommy classifies Randall's testimony as self-serving despite the trial court concluding that Tommy's testimony was credible.

A seller warrants the buyer against redhibitory defects or vices in the thing sold. A defect is redhibitory when it renders the thing useless or its use so inconvenient that it must be presumed the buyer would not have bought the thing if he had known of the defect. The existence of such defect gives a buyer the right to obtain rescission of the sale. La. C.C. art. 2520. A thing can also contain a redhibitory defect when the defect "diminishes its

usefulness or its value so that it must be presumed the buyer would still have bought it, but for a lesser price." *Id.* This type of defect limits the right of a buyer to seek a reduction of the price. *Id.* Further, although minor defects alone do not constitute redhibitory defects, multiple defects collectively may support redhibition. *Young v. Ford Motor Co., Inc.*, 595 So. 2d 1123 (La. 1992).

The implied warranty against redhibitory defects covers only hidden defects, not defects that were known to the buyer at the time of the sale, or defects that should have been discovered by a reasonably prudent buyer. La. C.C. art. 2521. To prevail in such a proceeding, the plaintiff must also prove that the defect existed at the time of the sale, and that he afforded the seller an opportunity to repair the thing. *Wilks v. Ramsey Auto Brokers, Inc.*, 48,738 (La. App. 2 Cir. 1/15/14), 132 So. 3d 1009; *Gaston v. Bobby Johnson Equip. Co., Inc.*, 34,028 (La. App. 2 Cir. 11/03/00), 771 So. 2d 848. Proof that a redhibitory defect existed at the time of the sale can be made by direct or circumstantial evidence giving rise to a reasonable inference that the defect existed at the time of the sale. *Wilks, supra*; *Royal v. Cook*, 07-1465 (La. App. 4 Cir. 4/23/08), 984 So. 2d 156, *writ denied*, 08-1133 (La. 9/19/08), 992 So. 2d 941; *Berney v. Rountree Olds-Cadillac Co.*, 33,388 (La. App. 2 Cir. 6/21/00), 763 So. 2d 799. The buyer of an automobile who asserts a redhibition claim need not show the particular cause of the defects making the vehicle unfit for the intended purposes, but rather must simply prove the actual existence of such defects. *Young, supra*. La. C.C. art. 2522 requires that a buyer give a seller notice of the defect and allow time for the seller to repair. If the seller has actual knowledge of the defect, no notice is required. *Id.*

6

Although the warranty against redhibitory defects regarding used products does not apply as extensively as with new products, it requires that even used equipment operate reasonably well for a reasonable period of time. *Berney*, *supra*. Inherent in the sale of an older car is the knowledge that the machinery and parts are worn and subject to breakdown and that the vehicle will require mechanical work from time to time to keep it in good running condition. *Wilks, supra*; *Burch v. Durham Pontiac Cadillac, Inc.*, 564 So. 2d 380 (La. App. 1 Cir. 1990), *writ denied*, 569 So. 2d 968 (La. 1990).

The existence of a redhibitory defect is a question of fact which should not be disturbed in the absence of manifest error. *Berney*, *supra*. To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993); *Modicue v. Prince of Peace Auto Sale, LLC*, 54,095 (La. App. 2 Cir. 9/22/21), 328 So. 3d 1239, *writ denied*, 21-01864 (La. 2/15/22), 332 So. 3d 1188. Even if an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Cole v. State Dept. of Public Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Id*. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id*. Moreover, where the factfinder's

7

conclusions are based on determinations regarding credibility of witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).

Because Randall and Tommy's testimony was wholly contradictory, the trial court made a credibility determination, choosing to believe Tommy's version of events. Randall claims that he informed Tommy that either the timing chain or the engine had issues, but Tommy maintains that he was only informed about the timing chain issue, not the engine issue. The record strongly supports that the vehicle had engine issues at the time of sale, especially considering Randall's assertions that Interstate Dodge informed him of the engine issues. Furthermore, Randall's testimony shows that he had actual knowledge of the engine defect as he admitted in his testimony that he knew the engine had issues.[1] Despite Randall's claims that he indicated to Tommy the sale of the vehicle was "as is," there is no evidence to suggest that Tommy waived the warranty against redhibition.[2]

Because of the conflicting nature of Randall and Tommy's testimony, the trial court was tasked with choosing between two permissible views of the evidence presented at trial. Though we find it questionable that a "mechanic by trade" would purchase a vehicle with a potentially defective

---

[1] Randall indicates in his testimony on several occasions that all sales are "as is." The mere fact that a sale is confected "as is" does not create a waiver of all warranties. *Modicue, supra*; *Hendricks v. Horseless Carriage, Inc.*, 332 So. 2d 892 (La. App. 2 Cir. 1976).

[2] In order for a waiver of the warranty against redhibition to be effective, it must: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and (3) either be brought to the attention of the buyer or explained to him. *Modicue, supra*.

timing chain, the trial court clearly made a credibility determination, finding Tommy's version of events to be true. As the jurisprudence instructs, this choice cannot be manifestly erroneous or clearly wrong. *See Cole*, *supra*. As the manifest error rule dictates, we give great deference to the trial court's credibility determination. We therefore are constrained to affirm the trial court's judgment awarding Tommy rescission of the sale, return of the purchase price, reimbursement of the cost of diagnostic testing, and his attorney fees.

## CONCLUSION

For the reasons stated herein, the judgment of the trial court is affirmed. Costs of this appeal are to be assessed evenly between the parties.

**AFFIRMED.**